FRANCIS LAGRANGE, ALIAS ISIDORE, A MAN OF COLOUR, PLAINTIFF IN ERROR *vs.* PIERRE CHOUTEAU, JUN.

After the decision of the case in the supreme court of the state of Missouri, the plaintiff presented a petition for a rehearing, claiming his freedom under the provisions of the ordinance of congress of the 13th of July 1787, for the government of the territory of the United States north west of the river Ohio. The supreme court refused to grant the rehearing; and the plaintiff prosecuted a writ of error to this court under the twenty-fifth section of the judiciary act of 1789. Held, that as the petition for rehearing forms no part of the record, it cannot be noticed. The jurisdiction of this court depends on the matter disclosed in the bill of exceptions.

ERROR from the supreme court of the state of Missouri.

An action of trespass vi et armis was brought in the state circuit court of the county of St Louis, state of Missouri, by the plaintiff in error, a man of colour, against Pierre Chouteau, the defendant, for the purpose of trying his right to freedom. The judgment of the circuit court was against the plaintiff; and on an appeal to the supreme court of Missouri, that judgment was affirmed.

The case was brought before this court by writ of error to the supreme court of Missouri, under the twenty-fifth section of the act to establish judicial courts of the United States, passed on the 29th of September 1789.

The case is fully stated in the opinion of the court.

Mr Kane, for the defendant in error, objected to the court taking jurisdiction of the case; as it did not come within the provisions of the twenty-fifth section of the act of congress.

It could not be found, on the most careful examination of the record, that the construction of any act of congress had been brought into question in the courts of Missouri, where the suit was originally entertained. All the questions in the case before those courts might have been and were decided without reference to the act of congress. The claim to freedom, asserted by the plaintiff, was left to the jury by the court before which it was tried; and if in any of the instruc-

tions given by the court, reference to the ordinance of congress of the 13th of July 1787, can be supposed to have been made, the construction given by the court to that ordinance was in favour of the plaintiff in error.

Mr Lawless, for the plaintiff in error, argued; that as the provisions of the twenty-fifth section do not declare in what stage of the proceedings the construction of an act of congress shall have been questioned to give this court jurisdiction; the refusal of the supreme court of Missouri to allow to the plaintiff a rehearing, he having petitioned for the same, alleging his right to freedom under the ordinance, made this a case for the cognizance of this court. Cited, Hickie et al. *vs.* Starke et al. 1 Peters, 94.

Mr Chief Justice MARSHALL delivered the opinion of the Court.

This was an action of trespass vi et armis, brought by th. plaintiff against the defendant, in the circuit court for the county of St Louis, in the state of Missouri, for the purpose of trying the right of the plaintiff to freedom.

The general issue was pleaded, and a verdict found for the defendant. The judgment on this verdict was carried by appeal to the supreme court for the third judicial district, where it was affirmed. This judgment has been brought into this court by writ of error.

The pleadings do not show that any act of congress was drawn into question; but the counsel for the plaintiff has read a petition for a rehearing, which sets forth a claim to freedom, under the ordinance of congress, passed on the 13th of July 1787, for the government of the territory of the United States north west of the river Ohio. But as a petition for rehearing forms no part of the record, it cannot be noticed. The jurisdiction of the court depends on the matter disclosed in the bill of exceptions.

At the trial, the plaintiff proved that Pascal Carré, in 1816, was desirous of selling the plaintiff, who was then his slave, and the defendant wished to purchase him. The offer of the defendant was declined, because the witness was

desirous of selling the slave to some person who would take him out of St Louis. Some time afterwards he sold the slave to Pierre Menard, a resident of Kaskaskias, in the state of Illinois, for the sum of five hundred dollars.

Pierre Menard deposed that some time in the year 1816, Pascal Carré offered to sell the plaintiff to him; which proposition was rejected, because he resided in Illinois, where slavery was not tolerated. On understanding that the defendant was desirous of purchasing a slave, the witness informed him that Mr Carre had one for sale; but the defendant replied that Carré would not sell the slave to him, because he resided in St Louis. It was suggested by Mr Berthold that the witness might purchase the slave for Mr Chouteau; which witness declined doing, because it would be treating his friend Carré incorrectly. He, however, ultimately agreed to buy the said slave for Mr Chouteau, take him down the river, and keep him there some months, and then deliver him to the defendant. He accordingly bought the slave, took him to St Genevieve in Missouri, and put him to work at mine La Motte, with some other hands. Some time afterwards he was sent to Kaskaskias, and put on board a keel boat as a hand. After remaining there about two days, he went in the boat to New Orleans, whence he, returned to Kaskaskias about the 30th of March 1817, as a hand in the boat. After remaining a few days for the purpose of unlading the boat, he was sent in her to the Big Swamp in Girardeau county, state of Missouri, where he remained five or six weeks; after which he returned in the boat to Kaskaskias, from which place, after two or three days, he was sent to St Louis, and delivered to the defendant, who returned to the witness the five hundred dollars he had advanced for him. The witness stated that he purchased the said slave for the defendant, and not for himself, and that he never intended to make Kaskaskias the place of his (the slave's) residence. Some other testimony substantially proving the same fact was introduced by the parties. Upon this testimony the plaintiff's counsel moved the court to instruct the jury.

1. That if they shall be of opinion that the plaintiff remained in the state of Illinois with the person who purchased

him, and who was a resident of the said state, they must find for the plaintiff. This instruction was refused.

2. That the right of the plaintiff to his freedom is not affected by any secret trust or understanding between the person who purchased and brought him to Illinois and any other person whatsoever. This also was refused.

3. That if the jury shall be of opinion that the plaintiff was, during any time, lawfully a resident of the state of Illinois, and in the service of a citizen of that state, claiming property in, and owner of the said plaintiff, they shall find for the plaintiff. This instruction was given.

4. That if the jury shall be of opinion that the plaintiff was sold absolutely by a citizen of the state of Missouri to a citizen of the state of Illinois, and belonged under such sale to such purchaser; no secret understanding between said purchaser and a third person shall affect the rights which the plaintiff may otherwise have to his liberty, as a consequence of his residence in the state of Illinois. The court refused to give this instruction as asked; but did instruct the jury, that if they believed the plaintiff was bought by colonel Menard for his own use, and taken to Illinois and kept there with the intention to make that his permanent place of residence, they ought to find for the plaintiff.

The counsel for the plaintiff excepted to the opinions given by the court, and to its refusal to give those which were asked.

The right of the plaintiff to liberty was supposed by the court to depend on the question of his being purchased in fact by a citizen of Illinois, and on his being carried to Illinois with a view to a residence in that state. The facts were left to the jury, and found for the defendant. It is not perceived that any act of congress has been misconstrued. The court is therefore of opinion that it has no jurisdiction of the case.

The writ of error is dismissed; and the cause remanded to the supreme court for the third judicial district of Missouri, that the judgment may be affirmed.