GARRICK v. FLORIDA CENTRAL AND PENINSULAR R. R.

1: EVIDENCE—AGENT—RES GESTÆ.—DECLARATIONS of an agent made after the happening of the event, and not in the course of his agency, are not a part of the *res gestæ,* and incompetent.

2. IBID.—HARMLESS ERROR.—Where a fact is first proven by incompetent evidence and afterward by proper evidence, the error of admitting the first evidence is harmless.

3. NEGLIGENCE—CHARGE.—A Judge cannot instruct the jury that a given state of facts would constitute negligence.
4. EXCEPTION not too general.
5. THIS COURT cannot conjecture as to whether a jury based its finding on one or the other propositions charged, where there is testimony to support both.
6. PUNITIVE DAMAGES—DEATH BY FAULT OF ANOTHER.—The personal representative of a decedent cannot recover punitive damages, under Rev. Stats., 2315 to 2318, for the death of the decedent by the fault of another.
7. DEATH BY FAULT OF ANOTHER—DAMAGES.—Is the statutory action given the personal representative of a deceased for damages, for the killing by the fault of another, a continuation of the same cause of action which the deceased would have had if death had not ensued? *Price* v. *R. R.*, 33 S. C., 561; *Hooper* v. *R. R.*, 21 S. C., 545; and *Reed* v. *R. R.*, 37 S. C., 42, *distinguished from this.*

Before BUCHANAN, J., Orangeburg, January, 1898.    Reversed.

Action by Julia E. Garrick, as administratrix of Jacob Garrick, *v.* Florida Central and Peninsular Railroad Company.    From judgment for plaintiff, defendant appeals.

*Messrs. C. J. C. Hutson* and *S. Dibble*, for appellant. The former cites: *Admissions of agent incompetent:* 4 S. C., 153; 19 S. C., 373.    *Trespasser on railroad track must look out for danger:* 22 C. C. of A. R., 121; 87 Wis., 195; 58 N. W., 79; 44 Cen. Law J., 10.    *Contributory negligence is simply one of the contributing causes of the accident:* 4 Rich., 228; 20 S. C., 221.    *No punitive damages in case of this kind:* Rev. Stats., 2315 to 2317; 29 S. C., 303; 5 Wal., 90; 47 S. C., 373; 12 Stat., 825.

*Messrs. Raysor & Summers* and *Jas. F. Izlar*, contra, cite: *Declarations of agent within scope of his authority admissible:* 1 Speer, 23; 18 S. C., 270; 39 S. C., 512; 42 S. C., 154; 23 S. C., 529; 25 S. C., 133; 22 S. C., 556; 57 Am. R., 157.    *Judge should not declare what facts constitute negligence, but simply define it:* 21 S. C., 549; 41 S. C., 441; 46 S. C., 203; 25 S. C., 30; 29 S. C., 322; 41 S. C., 19; 47 S. C., 382; 31 S. C., 34; 40 S. C., 313; 49 S. C., 285; 21 S.

C., 393; 51 S. C., 222.  *Third exception specifies no error,
and will not be considered:* 44 S. C., 546; 42 S. C., 125;
22 S. C., 271; 24 S. C., 280, 597; 46 S. C., 95, 541; 43
S. C., 92; 52 S. C., 75.  *Under English Statutes, giving
actions for damages for death by fault of another, pecuniary
loss is the rule:* 12 Am. St. R., 375.  *In this State, jury
may give such damages as they think proper:* 29 S. C., 303;
47 S. C., 383.  *The rule elsewhere:* 18 Ad. & Ell., 93; 57
Me., 202; 29 Gratt., 570.

Oct. 25, 1898.  The opinion of the Court was delivered by

MR. CHIEF JUSTICE McIVER.  The plaintiff, as admin-
istratix of her deceased husband, brought this action to
recover damages from the defendant company, for the kill-
ing of her said husband by the alleged negligence of said
defendant.  It appears that the deceased was in the employ
of the defendant company, working on the bridges and
trestles of said railroad, under the direction of one Renfroe,
who was charged with the duty of keeping said bridges
and trestles in proper repair; that on Friday evening, the
3d September, 1897, the deceased, when they quit work for
the day, started to go back up the road to see his wife, who
was in a delicate situation, using a velocipede for the pur-
pose, and going in a northerly direction toward Norway, a
station on the road.  Before reaching that point he was
struck by a material train moving backwarks in a south-
erly direction, and thrown from the track, sustaining seri-
ous injuries from which he died on the following Monday.
In the course of the testimony on behalf of the plaintiff, a
witness, Brown, was asked if he knew how the deceased
came from South Edisto—the place where he was working
that evening.  To which the reply was: "He started from
there on foot, Mr. Renfroe told me so."  To this defendant
objected, and the objection being overruled, to which excep-
tion was taken, the witness proceeded to say: "Mr. Renfroe
told me on Sunday morning that Garrick started from there
on foot, and he called him back and told him to take

the wheels"—meaning the velocipede; "Mr. Renfroe said he thought he was doing the poor boy a favor." Another witness on the part of the plaintiff was asked if he knew how Garrick came to use the velocipede that night, to which he replied: "I don't know positively. I had a conversation on that subject with Mr. Renfroe afterwards (objected to; objection overruled; ruling excepted to by the defense). I heard Mr. Renfroe say the night that Mr. Garrick was hurt, that Mr. Garrick started home on foot, and he called him back and told him to go home on the velocipede, and Mr. Garrick came back and started home on it." The jury returned a verdict in favor of the plaintiff for the sum of $1,995, the whole amount claimed in the complaint, and judgment having been entered thereon, defendant appeals upon the several exceptions set out in the record.

The first exception complains of error in allowing the testimony above stated to be received, over the objection of defendant. It seems to us that these declarations of Renfroe, made after the event, were no part of the *res gestæ*, and were not made in the course of his agency, and were, therefore, inadmissible, under the case of *Petrie* v. *R. R. Co.*, 27 S. C. 63. But while there was error in the ruling of the Circuit Judge as to the admissibility of the testimony above referred to and stated, yet such error was rendered entirely harmless by reason of the fact that the testimony of J. Lee Nease and S. B. Sawyer, jr., received without objection, was quite sufficient to prove the same fact which the declarations objected to tended to prove. This exception must, therefore, be overruled.

Exception 2 is in the following form: "Because his Honor, the Circuit Judge, erred in making the qualifications in his charge upon the requests I., II., and IV. of the defendant's counsel, whereas he should have granted said requests without qualification." This exception is entirely too general to entitle it to any consideration on our part,

under the well established rule, which has been so often applied as to supercede the necessity for any citation of authority.    Indeed, it is difficult to conceive how an exception could have been made more general than this.    We may add, however, that the Circuit Judge could not have charged either the first or second requests to charge without a violation of the constitutional provision forbidding a charge on the facts.    He could not instruct the jury that any given state of facts would constitute negligence, either contributory or otherwise, for that was a question for the jury to determine, under all the facts and circumstances of the case.    *China* v. *City of Sumter*, 51 S. C., 453.

As to the fourth request, that was distinctly charged, and all that the Circuit Judge did was simply to go on and explain the nature of the contributory negligence on the part of the plaintiff, which would relieve the defendant from liability; and in this there was no error.

The third exception is in these words: "Because his Honor erred in his charge to the jury in stating as follows: 'If there was gross carelessness or recklessness or wilfulness, then you may give what is known as punitive or smart money damages.    So it is for you to say what damages should be awarded to her, if you find she is entitled to recover.'"    This exception raises the main question in the case, and is the one to which the argument was principally directed.    It is an entirely novel question—in this State, at least—and its solution depends upon the proper construction of the statute, under which alone can such an action as this be maintained.

Before proceeding, however, to consider this question, it will be necessary to dispose of two preliminary objections which have been raised by counsel for respondent.    1st. That the exception is too general.    2d.    That the jury could not have considered the question of exemplary damages in making up their verdict.    As to the first objection, while there are cases which condemn the practice of framing exceptions by basing them upon mere ex-

tracts from the Judge's charge, in which no distinct legal proposition is stated, yet this case does not come under such an objection.    Here the Circuit Judge, in his charge, has stated a distinct and separate legal proposition as applicable to this case, and if there is error in such statement of the legal proposition, then such error is sufficiently pointed out by the exception.    The first objection is not tenable.

As to the second objection, we do not see how it is possible for this Court to ascertain what elements of damages the jury considered in making up their verdict.    All that we can possibly know is that the jury were explicitly instructed that "if there was gross carelessness or recklessness or wilfulness," then that they might give exemplary damages; and if the law does not allow such damages in a case like this, then there was error of law in the charge, and we have no right to conjecture or speculate as to what effect such erroneous instruction may have had upon the minds of the jury.    But it is said *in argument here* that "exemplary damages were not insisted upon, neither was any proof offered respecting such damages."    We can only say that the "Case" does not disclose the fact that exemplary damages were not insisted upon, and it is from that source alone that we are at liberty to ascertain what occurred in the Court below.    But we do learn from the "Case" that plaintiff offered evidence tending to show that the defendants, by their agents, were running a heavy material train in the night time backwards, without lights, over a road on which it was reasonable to expect that some one of the employees of the company might be passing on the velocipede, which plaintiff's testimony tended to show was habitually used by the employees in passing from their work just about the time the disaster occurred.    If this was not testimony tending to show "gross carelessness," if not "recklessness," it is difficult to say what was its intention.    The second objection is not tenable.

We come, then, to the consideration of the question presented by the third exception: Is a plaintiff, in a case like

this, entitled to recover exemplary damages—sometimes called vindictive or punitive damages—or is he limited to the damages expressly provided for in the statute, to wit: such damages as the jury "may think proportioned to the injury resulting from such death, to the parties respectively for whom and for whose benefit such action shall be brought." It is not, and cannot be, denied that prior to the passage of the act of 1859, 12 Stat., 825, an action of this kind could not have been maintained at all, and no damages of any kind could have been recovered by any person. It is obvious, therefore, that the plaintiff in this case derives her right to bring this action solely from the provisions of the statute above referred to, and the extent and measure of her rights must be determined by a proper construction of those provisions. The title of that act is as follows: "An act to provide for compensation in damages to the families of persons killed by the fault of others." The first section of the act reads as follows: "That whenever, after the passing of this act, the death of a person shall be caused by the wrongful act, neglect or default of another, and the act, neglect or default is such as would,. if death had not ensued, have entitled the party injured to maintain an action and recover damages in respect thereof, then, and in every such case, the person or corporation, who would have been liable, if death had not ensued, shall be liable to an action for damages, notwithstanding the death of the person injured, although the death shall have been caused under such circumstances as make the killing in law a felony." The second section reads as follows: "That every such action shall be for the benefit of the wife, husband, parent and children of the person whose death shall have been so caused, and shall be brought by or in the name of the executor or administrator of such person; and in every such action, the jury may give such damages as they may think proportioned to the injury resulting from such death, to the parties respectively for whom and for whose benefit such action shall be brought; and the amount

so recovered shall be divided among the beforementioned parties in such shares as they would have been entitled to if the deceased had died intestate, and the amount recovered had been personal assets of his or her estate," &c. The balance of this section need not be quoted, as we do not deem it pertinent to the question presented by this appeal. The third section need not be copied, as its sole purpose seems to be to prevent a double recovery for the same injury, as was said in the case of *Price* v. *Railroad Company*, 33 S. C., 561. This act of 1859 was incorporated in the General Statutes of 1882 as sections 2183–2186, inclusive, in substantially the same terms, and has here lately been incorporated in the Revised Statutes of 1893 as sections 2315–2318, inclusive, in like terms, except for the insertion of the amendment made by the act of 1893, 21 Stat., 523, which amendment does not affect the present inquiry. So that the law now stands precisely as it did upon the passage of the act of 1859, with the single addition made by the amendment of 1893 to the clause providing for the benefit of what persons the action shall be brought, which amendment manifestly does not in any way affect the present inquiry. Looking at the title of the act of 1859, it is very manifest that the intention of the legislature was "to provide for *compensation* in damages to the families of persons killed by the fault of others;" for it is so expressly declared in the title. Now, while it is true that in England it was held that the title was no part of the statute, and, therefore, could not afford any light in the construction of the statute, for the reason that the practice there was at one time to pass bills without any title, which was usually framed by the clerk of the house in which it first passes, after the passage of the bill; yet even there authorities may be found holding that "The title to an act, though no part of an act, is not to be wholly disregarded in putting a construction upon the statute. The object of the legislature is very often avowed in the title to an act, as well as in the preamble." Potter's Dwar. on Stat., 103.

But, as shown by the notes, the rule is otherwise in this country, where the whole statute, including the title as well as the preamble (if any), is all before the legislature when the act is upon its passage; and where, we may add, the title is not infrequently amended before the bill passes its final reading.   So, also, it is said in Endlich on the Interpretation of Statutes, section 58, after stating the rule in England: "In this country, whilst the title of a statute is not, in general, regarded as a part of the same, it is nevertheless regarded as a legitimate aid in ascertaining the intention of the legislature, when the language and provisions in the body of the act are ambiguous and of doubtful meaning and application."   But we need not pursue the discussion of this point, as it has been conclusively determined by one of our own decisons—*State* v. *Stephenson*, 2 Bail., 334—where it was distinctly held that the title of a statute may be resorted to, as well as the preamble, to aid the interpretation, even in the case of a penal statute.   We have, therefore, here, first, the title of the act, in which the avowed object of the statute was to provide *compensation* in damages for the families of persons killed by the fault of others, and next we have, in the second section of the act, language in which it is distinctly declared what kind of damages the jury may give in such cases—"such damages as they may think proportioned to the injury resulting from such death to the parties respectively for whom and for whose benefit such action shall be brought;" and this necessarily implies compensatory damages, and not exemplary or punitive damages, for it is impossible to conceive how exemplary or punitive damages could be "*proportioned*" to the injury resulting to the parties intended to be benefited, while it is very easy to see how compensatory damages could be measured by and *proportioned* to the injury sustained by the parties intended to be benefited. Compensatory damages and exemplary or punitive damages are of an entirely different nature and rest upon wholly different principles.   The former is intended to provide a

recompense for injuries sustained, while the latter is intended only as a punishment to the wrongdoer, and to furnish an example to him and other wrongdoers of the danger attending such wrongdoing.  Hence, it is very natural to find that the legislature, after having distinctly declared in the title of the act that their intention was to provide *compensatory* damages, has, in the body of the act, carried out such intention by declaring what kind of damages the jury might give in those cases, in which, for the first time, a right of action was provided for.  It seems to us very clear, therefore, that the legislature, in providing for a right of action which never before existed, has manifested, in unmistakable terms, its intention to provide that, in such new action, compensatory damages may be recovered, and has made no provision for the recovery of any other kind of damages, and that no court has the power to amend the act by adding to the expressly declared intention of the legislature, a further provision that in such an action damages other than compensatory may be recovered.  The legislature having said that the object of the act was to enable the sufferers to recover compensation in damages, the courts are not at liberty to say that another kind of damages, intended as a punishment for the wrongdoer, may also be recovered.  The legislature having said that its object was *compensation*, the courts have no authority to say that its object was *punishment* also.  If the legislature had intended to authorize the recovery of any kind of damages in this new action there for the first time authorized, it would have been very easy and most natural to have said so; but the legislature did not so say.  On the contrary, after providing in the first section that, in a case like this, "an action for damages" might be brought, it proceeds in the next section to provide what kind of damages may be recovered, precisely in accordance with the object of the act as expressly declared in the title.  If the legislature had made no further provision than that contained in the first section of the act—authorizing "an

action for damages"—then, possibly, it might have been inferred that the intention was, though contrary to the avowed object declared in the title, to confer the right to recover any kind of damages recoverable in other actions of a similar character. But when, in the second section, the legislature proceeded to prescribe what kind of damages might be recovered, precisely in accordance with the avowed object of the act, as expressly declared in the title, there is no room for any such inference. It is quite true, as has been held in *Petrie* v. *R. R. Co.*, 29 S. C., 303, and affirmed in *Strother* v. *R. R. Co.*, 47 S. C., 375, and now again affirmed in this case, that the measure of damages is not the *pecuniary* loss alone of the beneficiaries, in a case like this, but the jury may give such damages as they may think proportionate to the injury, whether pecuniary or otherwise, sustained by the beneficiaries; for it is obvious that such injury may be far beyond any mere pecuniary loss. But what this has to do with the question which we are called upon to decide, we are unable to perceive. The fact that the jury, in determining what amount of damages will be proportioned to the injury resulting to the beneficiaries from the death of their relative, are not confined to the consideration of the *pecuniary* loss sustained, but may, and should, consider any other injury, whatever may be its character, in ascertaining the proportion contemplated by the statute, throws no light whatever upon the question whether the jury has been authorized to give, in addition to the damages of the character just spoken of, exemplary damages, as a punishment to the wrongdoer or as an example of the danger attending such wrongdoing.

We have not deemed it necessary to consider the cases cited from the other States, for the reason that they are not authority here, and for the further and more important reason that such decisions were made under statutes differing from ours, and, therefore, afford no light in the construction of the language of our own statute, from which alone are we at liberty to ascertain the intention of our

legislature.    Take, for instance, the Virginia Statute, by
which the jury is authorized to "award such damages as to
it may seem fair and just."    The Court there construed
that language as authorizing the jury to award exemplary
or punitive damages.    It is very easy to conceive of a case
in which a jury might be fully warranted in considering it
*"fair and just"* that exemplary or punitive damages should
be awarded; for there may be a case in which the killing
was attended with such circumstances of wanton cruelty,
as would render it eminently *"fair and just"* that the slayer
should be mulcted in very heavy punitive damages, while
perhaps, the injury resulting from his death to the bene-
ficiaries might be comparatively small.    But our statute
contains no such language, and, on the contrary, as we have
seen, its language necessarily implies that compensatory
and not punitive damages may be awarded.

Again, it is contended for the respondent that the right
of action conferred upon the executor or administrator for
the benefit of certain relatives of the deceased, is but a con-
tinuation of the same cause of action which deceased would
have had if death had not ensued, and two cases have
been cited in support of this view—*Hooper* v. *R. R.
Co.*, 21 S. C., pp. 545–546, and *Price* v. *R. R. Co.*, 33
S. C., p. 562.    Neither of these cases, however, decide the
point, and this, we understand, was conceded by the distin-
guished counsel who cited them; but he relies upon certain
language, which he quotes from them, as indicating a view
in accordance with that for which he contends.    Whatever
may be the tendency of the language quoted from these
cases, which it would be unprofitable now to discuss, it is
enough to say that such language is not authoritative, as
the question here presented was not raised or considered in
either of those cases; and, indeed, in the Price case, it was
expressly stated that it was deemed unnecessary to consider
the question, "for our conclusion is drawn from the terms
of the statute, as evidencing the true intent of the legisla-
ture."    But without going into this question, which has

been much discussed elsewhere and variously decided, and assuming, *without deciding*, *however*, that the right of action conferred by the statute is but a continuation of the same cause of action which the deceased would have had if death had not ensued, it by no means follows that the legislature intended, by conferring this right of action on the executor or administrator of the deceased for the benefit of the persons specified, to give such executor or administrator the right to recover the same kind of damages which the deceased would have had, especially in view of the fact that the statute has in terms prescribed what kind of damages may be recovered. For it cannot be doubted that the legislature, if so minded, might have limited *the amount* of damages recoverable in such an action, as has been done in several of the States; and, if so, no reason is perceived why the legislature might not place any other limit upon the damages authorized to be recovered. The same may be said of the case of *Reed* v. *R. R. Co.*, 37 S. C., 42; for the sole question, so far as this matter is considered, which was either considered or decided in that case, was whether an action could be maintained by the administrator of one who had been instantaneously killed; and we are unable to find anything in the language used by Mr. Justice Pope, in vindicating the conclusion of the Court, which indicates even that his mind was ever turned to the question which we are now called upon to decide. He was not called upon to express or even indicate any opinion upon the question before us, and he did not express or even intimate an opinion as to such question.

After a very careful consideration and study of this case, we are of opinion that the Circuit Judge erred, as matter of law, in instructing the jury that "If there was gross carelessness or recklessness or wilfulness, then you may give what is known as punitive or smart money damages," as the statute, which alone authorizes the bringing of this action, does not contemplate or permit damages of that character to be awarded in such a case as this.

The judgment of this Court is, that the judgment of the Circuit Court be reversed, and that the case be remanded to that Court for a new trial.

MR. JUSTICE GARY, *dissenting*. I cannot concur in the opinion of Mr. Chief Justice McIver, as it seems to me it was the intention of the statute under which this action was brought that the representatives of a person killed by the wrongful act, neglect or default of another should have the right to recover any kind of damages which could have been recovered if death had not resulted from the wrongful act.