ALLEN v. UNION OIL AND MFG. CO.

ACTIONS—SURVIVAL—CONSTRUCTION OF STATUTES.—Remedial statutes should be liberally construed, and in the act of 1892 (21 Stat., 18), "and" should be construed "or." Under this act thus construed an action for consequential damages to real property survives to plaintiff's personal representative.

Before ALDRICH, J., Union, July 13, 1900.    Affirmed.

Action for damages to real property by C. L. Allen against Union Oil and Mfg. Co. by the following complaint:

"The plaintiff above named complains of the defendant and alleges:

"I. That the plaintiff is, and was at the time hereinafter mentioned, the owner and in possession of a certain lot, piece or parcel of land, with the buildings thereon, situated on Church street, in the town of Union, and in the county and State aforesaid, and bounded on the east and north by said Church street, on the south by lots of Robinson & Allen, and on the west by lot of Con. Allen, lands belonging to the ·Spartanburg, Union and Columbia Railroad and lands on the estate of B. F. Rawls, deceased, and lot of Elmira Littlejohn, and that plaintiff occupies and inhabits the premises described.

"II. That on the 12th day of June, 1889, the defendant was an unincorporated association, and was doing business under the name and style of the Union Oil and Manufacturing·Company at Union, S. C., and that on the 9th day of December, 1889, it was chartered in the same name and style as a body corporate and politic under the laws of the said State, and that it was and is capable of suing and being sued.

"III. That some time between the 12th day of June, 1889, and the 9th day of December, 1889, the defendant came into possession of a certain parcel, piece or lot of land in the town of Union and in the county and State aforesaid, on the west side of Church street, opposite the graded school building lot on the north, and bounded on the south by lot of Elmira Littlejohn, and on the west by road or avenue leading·from the depot of Southern Railway Company to the residence or premises of W. L. Culp, and the said described parcel, piece or lot of land is near the home and premises of the plaintiff described in paragraph one of this complaint, and the said

parcel, piece or lot of land is now in the possession and under the control of the defendant in this action.

"IV. That prior to its incorporation and some time after the 12th day of June, 1889, the defendant, over and against the protest of this plaintiff, commenced the erection of certain building receptacles and other works upon the premises described in paragraph three of this complaint, for the purpose of manufacturing cotton seed oil and cotton seed fertilizers, and for the keeping and storing cotton seed, cotton seed oil and cotton seed fertilizers, and after its incorporation as alleged, the 9th day of December, 1889, the defendant continued and completed the erection of said buildings, receptacles and other works, and ever since and does now continue the same, over and against the protest of this plaintiff, upon the premises described in paragraph three of this complaint, and has furnished and placed in said buildings all the machinery, means and appliances needed to carry on the projects of its said business.

"V. That after its incorporation, and before the commencement of this action, the defendant, the Union Oil and Manufacturing Company, erected, or caused to be erected, certain other buildings and receptacles upon the premises described in the third paragraph of this complaint, and use the same in connection with a ginning outfit or plant defendant placed upon said premises about the time of the completion of buildings and receptacles mentioned in the paragraph number five of the complaint, for the purpose of extracting seed from the crude cotton and compacting the lint thereof into marketable bales, and maintains, runs and operates the same and certain seasons of the year, particularly from some time in August to some time in February of each year, and the defendant at such seasons ever since and does now continue the same on its said premises.

"VI. That said defendant stores in the buildings and receptacles heretofore mentioned oils, cotton and other combustible substances, and at certain seasons of the year the ginning of cotton continues through the day until late hours

in the night time, and that sparks of fire and particles of lint cotton escape from the defendant's premises and fall upon, in and about the residence and outbuildings of this plaintiff.

"VII. That the buying, receiving and storing of cotton seed and the manufacture of cotton seed oil and cotton seed fertilizers by the defendant on the said premises has been carried on ever since 1889, and is still being carried on by the defendant day and night throughout the year, with an exceptional short interval in midsummer from six to ten weeks of each year; that said premises are and have been used by defendant as a depot for the storing and keeping of oils and fertilizers, from which premises they are taken from time to time to supply the traffic of the defendant, and the process of the manufacturing, storing and disposing of the same to meet the demands of the defendant's traffic in the same has been and is now continually going on.

"VIII. That by reason of said manufacturing, keeping, storing, selling and otherwise disposing of said oils, fertilizers, by and on the part of the defendant upon said premises, disagreeable smells and fumes have been caused to arise thereon and therefrom, which have continually and still do annoy the plaintiff, his family and servants, rendering his dwelling house and premises untenantable.

"IX. That by reason of the continual running of machinery by defendant upon its premises aforesaid for the uses and purposes heretofore mentioned, many noises of a loud and offensive character are made, which have continued and do still continue to distract and distress this plaintiff, his family and servants, rendering his premises undesirable and untenantable.

"X. That by reason of the maintaining, running and operating the said mill for the uses and purposes as aforesaid, and the keeping, storing and disposing of cotton seed, cotton seed oil and cotton seed fertilizers as hereinbefore mentioned, and the further maintaining, running and operating the ginning outfit or plant mentioned in the preceding paragraph of this complaint, all by and on part of the defend-

ant, smoke, dust, cinders, small particles of lint cotton and
soot have been caused to arise from the said premises of de-
fendant, which have continued and still continue to harass,
inconvenience and irritate the plaintiff, his family and ser-
vants, rendering his premises undesirable and untenantable.

"XI. That by reason of the maintaining, running and
operating the said cotton ginning plant by the defendant
upon its said premises the streets about plaintiff's said home
and premises at certain times (when the ginning and packing
of cotton is going on) are obstructed and jammed by the
incoming, outgoing and waiting wagons and teams of the
customers of the defendant, which have continued and still
continue to annoy and inconvenience this plaintiff, his family
and servants, rendering his premises inelligible as a place of
residence and untenantable.

"XII. That since the occupancy of said premises by the
defendant and before the commencement of this action,
through defendant's negligence and carelessness, water is
and has been allowed to collect and stagnate, and decaying
and decomposing vegetable matter is and has been permitted
to remain upon and around said premises of defendant,
thereby causing noxious and offensive smells to arise and
corrupting the atmosphere in and about the home and pre-
mises of the plaintiff, which conditions have existed and
continue to exist, greatly to the alarm of this plaintiff as to
the health of himself and family and to the nuisance of his
dwelling house and premises.

"XIII. That by reason of the acts committed by the de-
fendant as alleged in this complaint, as well as its continu-
ance of the nuisance created by the defendant upon its pre-
mises aforesaid, the said defendant has impaired the value of
plaintiff's said premises rendering them almost worthless,
and that it has endangered said premises by exposing the
same to the constant risk of destruction by fire, has discom-
forted his family and servants with disagreeable odors, and
has imperilled their health and lives, and has kept and is

keeping him and his family in continual fear and apprehension.

"XIV. That said acts have caused continued apprehension and mental suffering to plaintiff, his family and servants, who are obliged to remain in said premises, because plaintiff cannot afford to lose the use of said property or the rental thereof, and that if he shall move, plaintiff cannot get a tenant to take his said premises except at a rate of rent far below what its fair rental value would be were it not for said nuisance on defendant's premises, and that a fair valuation of plaintiff's property herein described, if it were not for said nuisance on defendant's premises as aforesaid, would be $4,000.

"XV. That on the     day of December, 1899, and at sundry times prior thereto, plaintiff gave notice to the defendant of the continuance of the nuisance maintained by defendant upon its said premises, and of plaintiff's damage in the sum of $2,500, and demanded this amount of defendant, but the defendant in this action has not abated said nuisance or in any way liquidated plaintiff's said damage.

"XVI. That the acts of the defendant in this action were, are and have been done negligently, unskilfully, wantonly and in a reckless disregard of the property and rights of this plaintiff, to his damage $2,500."

Plaintiff having died, the Circuit Court on motion ordered the case continued in the name of the administrator of plaintiff. From this order defendant appeals.

*Messrs. Duncan & Sanders,* for appellant, cite: 21 Stat., 18; 20 S. C., 479; 40 S. C., 393; 34 S. E. R., 858.

*Messrs. W. W. Dixon, V. E. DePass* and *G. P. Logan,* contra. Oral argument by latter.

March 25, 1901. The opinion of the Court was delivered by

MR. JUSTICE JONES. The "Case" states that this is an

"action for damages to real property." After the answer, but before the docketing of the case, the plaintiff died. On motion, Judge Aldrich made an order, July 13th, 1900, substituting Conquest Allen, administrator of C. L. Allen, deceased, as plaintiff in said action. The defendant appeals from this order on grounds which raise the question whether this action, being *ex delicto,* survives the plaintiff, or may be continued by his administrator.

It is conceded that the action is for a tort, and does not survive to the administrator of the injured plaintiff, unless it falls within the terms of act of 1892, 21 Stat., 18. As this involves a construction of said act, we quote it in full as follows: "An act to amend and declare the law in regard to actions by and against the representatives of deceased persons and others for injuries to real estate. Whereas, there is no remedy provided by law in South Carolina for injuries to the real estate of any person deceased, committed during the lifetime of such deceased person, or for injuries to the real estate of any person committed by any person deceased during the lifetime of such deceased person, now for remedy thereof.

"SECTION 1. Be it enacted by the Senate and the House of Representatives of the State of South Carolina, now met and sitting in General Assembly, and by the authority of the same, That causes of action for and in respect to any and all injuries and trespasses to and upon real estate shall survive both to and against the personal or real representative (as the case may be) of deceased persons, and the legal representatives of insolvent persons and defunct or insolvent corporations, any law or rule to the contrary notwithstanding."

This is a remedial statute, and as such should receive a liberal construction—that is, a construction "giving the words the largest, the fullest, the most extensive meaning of which they are susceptible." Endlich on Int. Stat., sec. 107. It will be observed that the title relates to "injuries to real estate," and so does the preamble; but in the body of the act the language is, "causes of action for and in respect to any
37—59

and all injuries and trespasses to and upon real estate," shall survive, &c. In order to carry out the purpose of the act as declared in the title and preamble, and giving the language used its fullest meaning, we do not think that the statute merely relates to actions for trespassers to real estate, which involves a direct invasion of the property, as the digging up of the soil, cutting down trees, &c., but fairly includes consequential injuries to real estate resulting from an actionable nuisance. This construction is made manifest by construing "and" as "or," which is very frequently done in the construction of statutes, and reading the statute in its broadest sense, as follows: "causes of action for and in respect to any and all injuries to, or trespasses upon, real estate." In reference to the distinction between trespasses and nuisance, Mr. High, in his work on Injunctions, 2 ed., p. 476, says: "The distinction between trespass and nuisance consists in the former being a direct infringement of one's right of property, while in the latter the infringement is the result of an act which is not wrongful in itself, but only in the consequences which may flow from it. In the one case the injury is immediate, in the other it is consequential, and generally results from the commission of an act beyond the limits of the property affected." A trespass is a direct and forcible invasion of one's property, producing a direct and immediate result, and a nuisance is a species of invasion of another's property, producing indirect or consequential injury by agencies wrongfully operating outside of the property injured. Wood on Nuisances, 2d ed., sec. 13. But to bring an actionable nuisance, either private or mixed, within the statute, the nuisance must produce some physical injury to the real estate of another, as distinguished from mere discomfort, inconvenience or bodily injury to the person of the owner. If the nuisance merely operates upon the mind or body of the owner, and does not injuriously affect the property itself in some material manner, it is not within the statute. For illustration, noise may under certain circumstances become a nuisance to the owner of a dwelling, but if

the atmospheric vibrations merely cause annoyance to the owner through his sense of hearing, that would not be an injury to his real estate, in the sense of the statute; but if the atmospheric vibrations wrongfully set in motion by another were such as to so shake the owner's dwelling as to materially affect it as a dwelling place, or weaken its fastenings, or break the window glass, or crack the plastering and the like, such physical injuries to the real estate would be fairly included within the language of the statute.    Disagreeable or noisome odors, fumes, gases, &c., may become a nuisance; but if the injury therefrom is limited in its effect to the human body, an action therefor does not survive under the statute.    So, also, smoke, dust, cinders, particles of lint cotton, may become a nuisance, but action therefor will not survive, under the statute, unless they injuriously and materially affect the physical condition of the real property, as distinguished from mere annoyance, discomfort, inconvenience or injury to the person.    We cannot say, however, as matter of law, that smoke, dust or soot may not injure the real estate, by discoloring the buildings or otherwise affecting its physical condition.    Nor can we say, as matter of law, that cinders and particles of lint cotton caused to fall upon one's premises·produces no actionable injury to the real estate. On the contrary, it is not hard to conceive circumstances under which such things cast upon one's premises and dwellings may materially injure the property, in which case action therefor would survive.    So, also, if one's easement of access to his real estate over a public way is specially and materially affected, such injury to his property right is an injury to real estate, within the statute.    In *Devereaux* v. *Champion Cotton Press Co.,* 17 S. C., 66, it was assumed on Circuit and not disputed that the blocking of a street was actionable, if thereby the plaintiff's real property was injuriously affected.    In *Ross* v. *R. R. Co.,* 33 S. C., 477, this Court held that "lands," in the condemnation statutes, included all rights or easements growing thereout.    Our conclusion, therefore, is that the order appealed from should be

affirmed, because there are some allegations in the complaint (and reference is made to the complaint which is officially reported herewith), which state acts of injury to real estate within the statute, as construed by us—for instance, the causing of sparks, cinders, particles of lint cotton to fall in and upon plaintiff's premises and dwelling, so as to expose the buildings to the constant risk of destruction by fire, and rendering them untenantable, and also obstructing plaintiff's easement in the use of the street as an access to his premises. This is not intended to be an exhaustive statement of the relevant allegations of the complaint, but as being sufficient to show that the complaint states a cause of action within our construction of the statute. If the complaint attempts to state acts of injury to real estate, but does so indefinitely or defectively, such defects may be remedied by motions to amend or make more definite, rather than by dismissal of the complaint, on the motion before us. The parties in the case designate this action as one for damages to real estate.

In the further progress of the case, care should be taken to limit plaintiff's action and corresponding proof to such wrongful acts of defendant as caused injury directly or consequentially to plaintiff's real estate as distinguished from acts which merely caused the plaintiff mental or bodily annoyance, discomfort or injury, in accordance with the views herein announced.

The judgment of the Circuit Court is affirmed.