SOUTH BOUND R. R. v. BURTON.

SAME v. TAYLOR.

SAME v. HIGBEE.

SAME v. DAY.

SAME v. PIERCE.

SAME v. FINLEY.

SAME v. GREER.

SAME v. HOLMES.

1. COLUMBIA — MUNICIPALITIES — STREETS — RAILROADS—DAMAGES—RIGHT OF WAY—ABUTTING LOT OWNERS.—Under the act of 1786, the State owns the fee in the streets in the city of Columbia, and the act of 1871 does not confer on the city council of the city absolute ownership of the streets, but only such power as is usually exercised over streets by such officers, and an abutting lot owner has no right

in the street except to use it for street purposes; and if the city council authorize a railroad company to build and operate in a street a railroad, the abutting lot owner is entitled to such damages from the railroad as amounts to the substantial depreciation of the value of such lot, and the measure of the damages is the decline in the value of the property consequent upon the use of the street by the railroad company, the jarring of buildings, noise, smoke, vapors, loss of light and air, increased risk of fire from sparks, material interference with ingress and egress, are items which may enter into such estimate, but only so far as they depreciate the value of the lots. *Garraux* v. *Greenville*, 53 S. C., 577; *Water Power Co.* v. *Greenville*, 57 S. C., 577; *McLaughlin* v. *Ry.*, 5 Rich., 596; *Bailey* v. *Gray*, 53 S. C., 515; *Napier* v. *Bulwinkle*, 5 Rich., 301, *distinguished from this.*

2. MUNICIPALITIES—STREETS—ESTOPPEL.—ADVERSE POSSESSION for the statutory period of a part of a street cannot confer title, but such possession without interference on part of public, coupled with other circumstances, may afford good ground for estopping the public from questioning the title.

Before DANTZLER, J., Richland, January, 1903.     Modified.

Eight actions by South Bound Railroad Co. against Eliza Burton; against Maria L. Taylor; against Mary E. Higbee; against Margaret Day; against Emma L. Pierce; against John N. Finley, against Aaron Greer; against Martha Holmes.     From Circuit decrees, plaintiff appeals.

*Messrs. Wm. H. Lyles* and *D. W. Robinson,* for appellant, cite, in all the cases: *On encroachments:* 37 S. C., 334; 57 S. C., 516; 95 Ala., 116; 21 L. R. A., 62; 2 Dill on Mun. Corp., secs. 529-533; 49 W. Va., 369; 55 L. R. A., 904-906; 33 S. E. R., 329; 45 S. C., 276; 99 U. S., 635. *Rights of abutting property owners in the streets of the city of Columbia:* 5 Stat., 505; 12 Stat., 293; 14 Stat., 569; 6 Stat., 485. 53, 186, 214, 599; 12 Stat., 116; Gen. Stat., 1882, 1599; 22 Stat., 376; 23 Stat., 1154; 4 Pet., 285; 109 U. S., 672; 1 Cranch, 509; 166 Mass., 183; Ell. on R. R., 2 ed., sec. 723; 2 Dev. on Deeds, sec. 848; 134 Mass., 17; 87 N. Y., 287; 4

Ency., 2 ed., 813, 814; 22 How. Pr., 130; 87 Tenn., 522; 141 Ind., 604; 5 Rich., 595; 33 S. C., 478. *Plaintiff's rights under charter:* 17 Stat., 949; 20 Stat., 763; Con., art. III., sec. 31; art I., sec. 17; 33 S. C., 482; 5 Rich., 596; 36 S. C., 135; 96 U. S., 315; 24 Ia., 480; 3 Porter, 425; 23 Pick., 360. *As to eminent domain:* 99 U. S., 635; 53 S. C., 580; 5 Rich., 598; 4 McC., 541; 2 Dill. Mun. Corp., sec. 992. *Is location of railroad in street a "taking" of private property?* 53 S. C., 89, 577; 48 S. C., 562; 99 U. S., 625; 125 U. S., 161; 4 L. R. A., 628; 10 N. J. Eq., 358; 102 Ill., 64; 47 S. C., 482; 80 U. S., 166; 139 U. S., 21; 132 U. S., 75; 18 Pa., 187; 21 Ill., 516; 29 Ill., 297; 35 Cal., 331; 6 Whart., 456; 121 N. Y., 505; 50 N. Y., 206; 22 How. Pr., 130; 3 Sed. on Dam., 8 ed., sec. 1184; 2 Dill. on Mun. Corp., 4 ed., sec. 702; 4 L. R. A., 623; 195 Ill., 456; 91 N. Y., 149; 39 N. Y., 404; 90 N. Y., 122; 106 N. Y., 157; 121 N. Y., 505. *As to condemnation statutes:* Code, 1902, 2188, 2190; 38. S. C., 37; 28 S. C., 399; 21 S. C., 431; 17 Ency., 1 ed., 299, 300, 301; 59 S. C., 362. *Compensation under common law:* 147 U. S., 253; 18 L. R. A., 341; 25 L. R. A., 655; 34 Md., 463; 18 L. R. A., 341; 43 L. R. A., 557; 4 L. R. A., 623; 94 U. S., 324; 165 U. S., 372; 50 N. Y., 210. *As to light and air:* 53 S. C., 515; 5 Rich., 311. *As to inconveniences:* 47 L. R. A., 758; 50 L. R. A., 813; 59 S. C., 579; 64 S. C., 129; 48 S. C., 560; 30 S. C., 539; 46 S. C., 327; 54 S. C., 250; 34 L. R. A., 769; 195 Ill., 456; 5 Rich., 594; 47 L. R. A., 758. *Damages to corner lots:* 53 S. C., 577, 59; 4 L. R. A., 627; 61 U. S., 135; 167 U. S., 100. In the Burton case: *As to lots not abutting:* 64 S. C., 129; 48 S. C., 560; 30 S. C., 539; 46 S. C., 327; 54 S. C., 250; 34 L. R. A., 769; 195 Ill., 456.

*Messrs. Melton & Belser, P. H. Nelson,* for six respondents; *Mr. R. W. Shand,* for Burton, and *Mr. J. T. Seibels,* for Holmes.

*Messrs. Melton & Belser* and *P. H. Nelson* cover the law

for respondents, and cite: *Injuries to abutting property by commercial railroad is a "taking." Property is rights over things:* Lew. on Em. Dom., sec. 541; 116 Mo., 527; 136 N. Y., 577; 74 Mich., 558; 2 Pa. Dist. Ct., 604; 28 Fla., 558; 77 Wis., 288; 51 N. H., 504; Sed. on Con. Law, 2 ed., 462. *Rights of abutter in streets:* 14 L. R. A., 370; 104 N. Y., 291; Lew. on Em. Dom., 171; 1 Ency., 2 ed., 225, 228, 234, 185, 186, 175, 179; 15 N. Y. Eq., 481. *State holds fee in street for street purposes:* 4 Stat., 751; 104 N. C., 431; 4 McC., 541; 5 Rich., 598. *Interference with or abridgement of abutter's rights is a "taking:"* Lew. on Em. Dom., secs. 56, 57; 3 Wall., 166; 90 N. Y., 48; 14 Conn., 146; 14 L. R. A., 370; 9 Ind., 433; 57 Me., 481; 14 Gray, 115; 30 Mich., 308; 29 Minn., 288; 51 N. H., 504; N. J. L., 335; 90 N. Y., 122; 22 L. R. A., 627; 26 Or., 242; 53 S. C., 89, 579; 2 Dill. on Mun. Corp., sec. 990; 1 Lew. on Em. Dom., sec. 91e; 1 Lew. on Dom., 240, 237. *Commercial street railway is not legitimate use of street and is burden on fee:* 2 Dill. Mun. Corp., 725; Mills on Em. Dom., sec. 204; Elliott on Roads and Streets, 528; Booth on Street Railways, sec. 78. *When fee is in public, such railway is a taking of abutter's rights and easements:* 22 L. R. A., 627; 90 N. Y., 122; 104 N. Y., 268; 1 Hare Am. Const. L., 370, 375; Lew. on Em. Dom., secs. 114, 115; Booth Street Ry. L., sec. 81; 74 U. S., 272; 1 Rorer R. R., 524; 7 Ind., 38; 44 Ga., 546; 14 L. R. A., 378; 18 Or., 237; 66 Miss., 279; 85 Ky., 640; 36 La. An., 898; 39 Minn., 286; 113 N. C., 610; 38 W. Va., 438; 94 U. S., 324; 26 Or., 224; Lew. on Em. Dom., sec. 911; Cool. on Lim., 6 ed., 682; 2 Dill. Mun. Corp., secs. 704, 704a; Kearby on Electric Wires, 61-68; 1 Lew. on Em. Dom., 195-6, 233. *Statute provides remedy for such case:* 33 S. C., 483; 47 S. C., 483; 59 S. C., 571; 54 S. C., 199. *As to estoppel of municipality:* 57 S. C., 507; 45 S. C., 269; 37 S. C., 327. *City cannot deprive abutter of right to compensation:* 59 S. C., 371; 16 S. C., 365; 21 S. C., 420; 38 S. C., 34; 15 S. C., 476. *As to easements of light and air:*

5 Rich., 311; 53 S. C., 516; 22 L. R. A., 536; 52 L. R. A., 409.

November 28, 1903.   The opinion of the Court was delivered by

MR. JUSTICE WOODS.   The South Bound Railway Company brought these separate actions against the several defendants to enjoin them from prosecuting statutory proceedings instituted to obtain compensation for depreciation of their property in the city of Columbia, resulting from the construction and operation of the plaintiff's railroad through Lincoln street.   All of the lots abut on Lincoln street, except lot No. 2 of the defendants, Eliza Burton and her cotenants, which is contiguous to their lot No. 1 on that street.   The Circuit Judge, upon trial of the case, dissolved the temporary injunctions, holding that all the defendants were entitled to have their damages assessed under the condemnation statute.

The act of 1786, 4 Stat., 751, under which the city of Columbia was founded, provided that the land acquired by the commissioners for that purpose should be held by them "for the use of this State;" but it directs them to lay off lots and streets of prescribed dimensions.   In 1871, the legislature empowered the city council to "lay out new streets, close up, widen or otherwise alter those now in use," subject to the constitutional prohibition against taking private property without compensation, and the statutory provisions as to the method of acquiring property for street purposes and assessing damages.   Under this authority, the city council, on September 26th, 1899, authorized the South Bound Railroad Company to build its road through Lincoln street.

The appellant takes the position that the State, under the act of 1786, remains the absolute owner of all streets of the city, that abutting owners can acquire no rights therein against it, and since it empowered the city council to close up or alter the streets, the authorization by the council to use Lincoln street was equivalent to direct authority to the railroad from the State.   We incline to think the appel-

lant's view is correct, that the rights acquired by the State in the lands upon which the. city of Columbia was laid off are similar to those of the United States in the lands upon which the National Capital is built. In both instances, the streets were laid off under public authority, and commissioners directed to sell lots with reference to those streets. In such circumstances the public faith is pledged not to destroy or materially interfere with the street privilege, which it created as an inducement to purchasers. This principle was not involved in *Van Ness* v. *Mayor,* 4 Peters, 287, or *Potomac Steamboat Co.* v. *Upper Potomac Steamboat Co.,* 109 U. S., 672, relied on by appellant. Conveyance to the purchaser of lots abutting on a street carries with it the property rights to the reasonable use of the street, of which he cannot be deprived for even a public purpose without compensation. *Hot Springs R. R. Co.* v. *Williamson* (U. S.), 34 L. ed., 355, note; *R. Co.* v. *Applegate* (Ky.), 33 Am. Dec., 497; *Haynes* v. *Thomas,* 7 Ind., 43; Lewis on Eminent Domain, sec. 114.

But whatever may be the rights of the State in this regard, it is clear that the legislature did not by the act of 1871 intend to confer on the city council the absolute power over the streets which appellant attributes to the State. Fair interpretation of the act leads to the conclusion that it only gives such control of streets as is usually exercised by such officers, and this control is subject to the constitutional burden of making compensation for the taking of private property.

It may be true that where the State by charter authorizes the construction of a railroad on a definite line, the right is implied to enter and cross the lands of the State on that line; but this implication does not extend to the destruction or impairment of private property rights which others have acquired with respect to such land in consequence of an antecedent contract with the State. It is manifest, therefore, the respondents having acquired property rights in Lincoln street by reason of the State's sale of the abutting lots to

their grantors, with an implied contract that the purchasers should have the usual benefits and privileges of abutting owners, the State could not, though the owner of the street, authorize the taking away of such benefits and privileges without compensation.

The vital question, therefore, is whether the construction of a railroad through Lincoln street is such curtailment of the usual street privileges as entitles an owner of abutting lots to compensation for the depreciation in value of his property arising from the railroad use. It is insisted such depreciation does not amount to taking property, but only damaging it, and hence cannot form the basis of a proceeding under our Constitution and statute, which only provide compensation for *taking*. It is not to be doubted, as said in *Transportation Co.* v. *Chicago*, 99 U. S., 635, "The State and the city council as its agents had full power over the highways of the city to improve them for the uses for which they were made highways." Those who purchase city lots, in the absence of statutory protection, take them subject to the exercise of the discretion of the city authorities to improve the streets for the uses for which they were made highways. It is true, in *Garraux* v. *Greenville*, 53 S. C., 577, 31 S. E., 334, the Court said: "The great weight of authority is to the effect that a change in the grade of a street which diminishes the value of the adjacent property is not a taking of property, within the constitutional provision above quoted." Similar expressions are used in *Water Co.* v. *Greenville*, 53 S. C., 89. These are correct statements of the law applicable to those cases, both of which involved claims for damages arising from a change of grade made in improving a street; for the claimants there held their property subject to the right of the city council to improve the street by changing the grade, and hence such alteration could not involve the taking of a property right, for the reason that none existed as against the discretion of the council to change and improve the street. 2 Dillon on Municipal Corporations, sec. 990.

The depreciation of value produced by building an ordinary railroad through a street presents a very different question. The operation of a railroad running to distant points is not a street purpose. It is not ordinarily used to transport either freight or passengers from one part of a city to another, and has no direct connection with a city's internal traffic or travel, which are the distinctive uses of its streets. Hence the building and operation of a railroad through a street cannot be regarded such a street use as to require the abutting land owner to submit to the total or partial destruction of the value of his property without compensation. Causing such depreciation is clearly destroying or taking property. Property is not only ownership of particular lands or chattels, but it embraces the value they have by reason of their legal relations to all other things. All rights in a street which the residents of a city have in common are administered, under legislative authority, by the city council as trustees for all its citizens, and hence the council's consent to the use of the street by the railroad company is binding on the city at large (*Cherry* v. *Rock Hill*, 48 S. C., 560) ; but an abutting land owner has a special property in the benefits derived from the street on which his land is situated, by reason of its relation to the street, which differs in kind and degree from the interest of the municipal public, and the destruction or any impairment of these benefits for other than street purposes, which materially lessen its value, is taking private property. This view seems clearly correct in principle, and we think it is supported by the great weight of authority even in those States where, as in this State, the constitutional and statute law do not provide for compensation for damage to property when taken for a public purpose. *Wilkins* v. *Gaffney*, 54 S. C., 199, 32 S. E., 299 ; *Abendroth* v. *R. Co.* (N. Y.), 11 L. R. A., 634 ; *Story* v. *R. Co.*, 90 N. Y., 122 ; *White* v. *R. R.* (N. C.), 22 L. R. A., 627 ; *R. R. Co.* v. *Steiner*, 44 Ga., 546 ; Elliott on Roads and Streets, 528 ; 1 Lewis on Eminent Domain, 240.

As was intimated in *Ross* v. *Ry. Co.*, 33 S. C., 483, 12 S.

E., 101, and *Leitzsey* v. *Water Power Co.,* 47 S. C., 482, 25 S. E., 744, it would be a very narrow and technical construction not to hold that the term "lands," used in the condemnation statute, embraces "all rights and easements growing thereout." The case of *McLauchlin* v. *Ry. Co.,* 5 Rich., 596, was decided under constitutional and statute law essentially different from those now in force; but even if this was not the case, we should be forced to overrule it on this point on principle as well as under the authorities above cited.

The great majority of the older authorities sustain appellant's view that the doctrine above stated applies only where the owner of the abutting property also owns the fee in the street, but not where he has only an easement, the fee being in the State or the city. A careful collation of the cases supporting this position is found in 2 Dillon on Mun. Corp., sec. 702, *note.* But this doctrine is now completely overturned. 2 Dillon on Munic. Corp., secs. 704 and 723c; *Story* v. *R. Co., supra; Lahr.* v. *R. Co.,* 104 N. Y., 268; *White* v. *R. R., supra; Theobold* v. *Ry. Co.* (Miss.), 6 So., 230; *McQuaid* v. *Ry. Co.* (Oregon), 22 Pac., 899; *Kaufman* v. *R. Co.* (Wash.), 40 Pac., 137; *Adams* v. *R. Co.* (Minn.), 1 L. R. A., 493.

It is difficult to imagine a right more empty and theoretical than private ownership of the fee in the street of an established city. The possibility of regaining possession of the property by abandonment of the street is so remote that it may ordinarily be regarded a negligible factor. The adjacent owner has no present beneficial use differing in the slightest degree from that which is acquired by a purchaser, for himself and his assigns, who buys a lot abutting on a street laid out by the State or the city on its own land. In the one case, in his dedication he retains, and in the other, by the State's or the city's dedication he acquires, certain street privileges which constitute property.

But it is not the mere laying of a railroad track and the operation of a railroad in a street that would entitle abutting land owners to compensation, when, as in these cases, they

have not the fee in the street, and have, therefore, not even
a technical interest in it beyond the right to use it for street
purposes.   Hence it is only the substantial depreciation of
the value of the abutting lots that can be assessed in their
favor, and the measure of the assessment is the decline in the
value of the property consequent upon the use of the street
by the railroad.   The difference in value should be substan-
tial, and not fanciful or conjectural, for the advance of
society imports increased friction among its members; and
if the law sanctioned the holding up for compensation of
public and private enterprises on account of mere inconve-
nience or annoyance, it would impede rather than promote
the public welfare.   We shall not attempt to add anything to
the very clear statement of the law on this subject made by
Mr. Justice Jones in *Allen* v. *Union Oil Co.*, 59 S. C., 578,
38 S. E., 274.   It is there held that there must be some sub-
stantial physical injury to the real estate, not merely discom-
fort, inconvenience or bodily injury to the person of the
owner.   The jarring of the building, noise, smoke, vapors,
loss of light and air, increased risk of fire from sparks, mate-
rial interference with ingress and egress, set forth in each of
the answers, are all items which may enter into the estimate,
but only so far as they depreciate the value of the lots.
*Bowen* v. *R. R. Co.*, 17 S. C., 579; *Board of Trade* v. *Dorst*,
85 Am. St. Rep., 309, note; *Egerer* v. *R. R. Co.* (N. Y.), 14
L. R. A., 381, and note; *Case* v. *Minot* (Mass.), 22 L. R.
A., 543, note.   The loss of light and air cannot be excluded
from consideration, as appellant contends, under the author-
ity of *Bailey* v. *Gray,* 53 S. C., 515, 31 S. E., 913, and
*Napier* v. *Bullwinkle*, 5 Rich., 301, for these cases only hold
that the right to light and air cannot be acquired by prescrip-
tion, and do not touch this question.   The case of *Manson* v.
*R. R. Co.*, 64 S. C., 121, 41 S. E., 832, does not apply,
because in that case the Court held those claiming damages
had no legal interest in Sydney Park, near which their lands
were situated, differing in kind from that of other residents
of the city of Columbia.

We proceed to the consideration of the several cases in view of the legal conclusion above stated. The jury determines the amount of the assessment, the Court can only fix the principles on which it should be made. If the foregoing statement of the law is correct, it will not be denied that the injunction in the case of Martha Holmes must be dissolved. Maria L. Taylor, Eliza Burton and her cotenants, Mary E. Higbee, John N. Finley and Aaron Greer have corner lots, and hence have access from another street. This fact may lessen the depreciation, but it does not destroy their right to have the loss of value assessed. It is alleged that Emma L. Pierce, Margaret Day, John N. Finley, Mary E. Higbee, and Eliza Burton and her cotenants, have encroached on Lincoln street, and it is contended that in so far as the injury to the lots of these parties arises from, or is increased by, such encroachment, they can make no claim against the railroad company. The appellant has attacked with great force the conclusion reached by the Court in *Crocker* v. *Collins,* 37 S. C., 334, 15 S. E., 951: "We think, therefore, that mere adverse possession for the statutory period of a street or alley in a town, which is a public highway, cannot confer a title. But where such possession is accompanied with other circumstances, which would render it inequitable that the public should assert its rights to regain possession, then, upon the principle of estoppel, a party may be protected against the assertion of right by the public, in order to prevent manifest wrong and injustice. For example, when a party, either under an honest conviction of right, has taken posession of a portion of one of the streets or alleys of a town, and expended his money in erecting buildings thereon, without interference on the part of the public, these or perhaps other circumstances, connected with adverse possession for the statutory period, may afford good ground for estoppel." This doctrine has been repudiated by Courts of high authority, but it has much to commend it. Certainly the argument against it is not sufficiently strong to warrant the Court in overruling the case. We think there is

sufficient evidence to sustain the conclusion of the Circuit Judge, that these cases fell within the rule stated in that case. Lot No. 2, of Eliza Burton and her cotenants, does not abut on Lincoln street, and they have not, by virtue of such ownership, any property rights in its street privileges differing from those of the general public. For this reason, the injunction in their case must be made permanent as to this lot. *Cherry* v. *Rock Hill, supra; Manson* v. *R. R. Co., supra; Aldrich* v. *R. R. Co.* (Ill.), 57 L. R. A., 237.

With the modification indicated above, the judgment of the Circuit Court is affirmed.