## WALPOLE v. CITY COUNCIL.

1. Plaintiffs sued for certain assets vested in them by a joint resolution of the legislature, and the answer made the point that this joint resolution was unconstitutional, and at the trial the defendants orally objected that the complaint did not state facts sufficient to constitute a cause of action.  *Held*, that the right of plaintiffs to recover these assets under this joint resolution was properly considered and adjudicated.

2. All navigable cuts being by law public highways, and jurisdiction over highways having been vested in the board of county commissioners by the Constitution of 1868, jurisdiction over such a cut could not be granted to any other body, and therefore a joint resolution which purported to confer upon a special board all the rights and powers which

had belonged to a like board of commissioners of a navigable cut prior
to 1868, is unconstitutional.

Before Witherspoon, J., Charleston, March, 1889.

Action by John B. Walpole, Edward B. Bryan, and Francis
Y. Legare, commissioners of Newtown Cut, against The City
Council of Charleston and The County Commissioners of Charles-
ton County, commenced June 8, 1888.    The complaint was as
follows:

Plaintiffs above named, complaining of the above named de-
fendants in the above entitled action, allege:

1st.  That the defendant, the City Council of Charleston, is a
municipal corporation, duly organized under the laws of the State
of South Carolina, with power and liability to sue and be sued,
under and by its said name.    And that the defendant, the Coun-
ty Commissioners of Charleston County are a board representing
the County of Charleston, with the powers, duties, and liabilities
belonging to such boards under the constitution and laws of the
State of South Carolina.

2nd.  That from the year 1738, "Newtown Cut," which con-
nects the James Island Creek and waters of the Ashley River
with the Stono River, near Dill's Bluff, was opened by commis-
sioners especially appointed by the legislature of South Carolina,
who were reappointed from time to time, and by act of the gen-
eral assembly, passed in the year 1846, it was enacted that the
commissioners of Newtown Cut, in St. Andrew's Parish, Haul-
over and Watt's Cuts, in the parish of St. John's, Colleton, shall
each retain separate jurisdiction as heretofore, for the imposing
and collecting of fines incurred by defaulters from public duty on
each of said cuts, and all fines collected for default of such duty
on each cut, shall be for the separate use and benefit of each of
said cuts, and be retained in the hands of the commissioners of
such cut, until appropriated for its use.

3rd.  That at the close of the late war, Paul T. Gervais was the
sole surviving commissioner of Newtown Cut, and he departed
this life on or about the second day of February, 1874.

4th.  That by the act of the general assembly, approved the

23rd day of December, 1885, John B. Walpole, Edward B. Bryan, and Francis Y. Legare, sr., plaintiffs above named, were appointed commissioners of Newtown Cut, and were vested with the title to all the property and funds which were held by or belonged to the former commissioners, together with every right of action necessary to recover and protect the same, and also all rights, powers, and privileges which were of or belonged to the former commissioners of Newtown Cut, by force of any law, statute, usage, or custom.

5th. That on or about the first day of January, 1866, the defendant, the city council of Charleston, issued to the commissioners of Newtown Cut certain certificates of stock of the city of Charleston, to wit:

| | |
|---|---|
| Certificate number 1824, for the sum of | $610 00 |
| of the issue of 1857. | |
| Certificate number 886, for the sum of | 390 00 |
| of the issue of 1857. | |
| Certificate number 995, for the sum of | 240 00 |

and thereby became and acknowledged itself to be indebted to said commissioners of Newtown Cut in the said several sums amounting to twelve hundred and forty dollars. That all of said stock drew interest at the rate of 6 per cent. per annum, and was registered in the name of the commissioners of Newtown Cut.

6th. Upon information and belief, plaintiffs allege that between the first day of January, 1866, and the fourth day of September, 1873, some interest due upon said city stock was paid unto Paul T. Gervais, then treasurer of the commissioners of Newtown Cut. That on said 4th day of September, 1873, the sum of $37.20 was paid unto the said Paul T. Gervais, treasurer of the commissioners of Newtown Cut, since which date no further payment of interest upon said stock has been made, nor of any portion of the principal sum of said indebtedness either to plaintiffs or their predecessors in office, or to any person or persons, corporation or individual entitled to receive the same.

7th. That on the 25th day of July, 1882, the said city council of Charleston issued in place of the old certificates above mentioned, which had been lost, new certificates in the name of the commissioners of Newtown Cut. Plaintiffs are informed that the

last named certificates were issued upon the application of the county commissioners of Charleston County, who claimed to be the legal successors of the commissioners of Newtown Cut, and, as such, entitled to said stock, and the said city council of Charleston, thereafter, to wit, on or about the 26th day of July, 1882, unlawfully and without authority from the commissioners of Newtown Cut, or of any person or persons entitled to act for them, cancelled said city stock so registered in the name of the commissioners of Newtown Cut, and paid over to said county commissioners of Charleston County the sum of $582.80, which it claimed to be the total amount of arrearage of interest due upon said city stock, and at the same time issued to the said county commissioners certain bonds and a certificate of stock in lieu and stead of the city stock so cancelled, to wit:

Bond, number 1282, issued Dec. 23d, 1878, due 1909,
interest 4 per cent.,                   $1,000 00
Bond, number 919, issued Dec. 23d, 1879, due 1909,
interest 4 per cent.,                    100 00
Bond, number 918, issued Dec. 23d, 1878, due 1909,
interest 4 per cent.,                    100 00
And one certificate of city stock for          40 00

Wherefore plaintiffs pray judgment that the cancellation of said city stock for $1,240.00 by the said city council be decreed to have been without authority and void; and the issuing of said bonds and stock, and the payment of said sum of $582.80, to the county commissioners of Charleston County also be decreed to have been without authority, and that the said county commissioners had no authority to receive said bonds and stock in lieu of such cancelled stock, nor said sum of $582.80; that said city council of Charleston may be ordered to account to plaintiffs for the said sum of twelve hundred and forty dollars, and all arrearages of interest due thereon, and for such other and further relief as may be necessary and proper.

The issues raised, the order of the judge, and plaintiffs' exceptions, are stated in the opinion.

*Messrs. Barker, Gilliland & Fitzsimons,* for appellants.

*Mr. Charles Inglesby,* contra.

April 19, 1890. The opinion of the court was delivered by

MR. JUSTICE McGOWAN. This action was brought for the recovery of the value of certain stock of the city of Charleston ($1,240) and interest due thereon. The city stock, the value of which was sought to be recovered, on January 1, 1866, belonged to the old *ante-bellum* "board of commissioners of Newtown Cut," and stood registered in their name. The complaint (which should appear in the report of the case) states that the interest was paid on this stock by the city of Charleston to the then "commissioners of Newtown Cut" up to September 4, 1873, on which day the sum of $37.20 was paid to Mr. Paul T. Gervais, at that time the sole surviving member of the old board, and he died shortly after on February 2, 1874.

On July 25, 1882, the city council of Charleston issued new certificates of stock in the name of the commissioners of Newtown Cut, in place of the old certificates, which were lost (the commissioners being all dead). On the next day (July 26, 1882), the city council of Charleston cancelled the city stock so issued and registered in the name of the commissioners of Newtown Cut (then dead), and turned over to the county commisioners of Charleston County the sum of $582.80, which it claimed to be the total amount of arrearage of interest due on said stock, and at the same time issued certain bonds and a certificate of stock of the face value of $1,240 to the said county commissioners of Charleston, in lieu of the cancelled stock. The matter stood in this condition until December, 1885, when the legislature passed "a joint resolution, appointing the plaintiffs commissioners of Newtown Cut, a highway connecting the water of Ashley River and Stono River, and that said commissioners and their successors in office be, and they are hereby, vested with the title to all the property and funds which were held by or belonged to the former commissioners, together with every right of action necessary to recover and protect the same ; and also all the rights, powers, and privileges which were of or belonged to the former commissioners of Newtown Cut by force of any law, statute, usage, or custom, &c. 19 Stat., 445.

Thereupon the commissioners named in the joint resolution brcught this action as plaintiffs, alleging that the cancellation of the aforesaid stock and the transfer of it to the county commissioners of Charleston County, were done without any authority from the board of commissioners of Newtown Cut, or any person entitled to act for them, and were done solely on the application of the county commissioners of Charleston County, who claimed to be the legal successors of the commissioners of Newtown Cut, and as such entitled to said stock. The defendants, the city council of Charleston, and the county commissioners of Charleston County, answered: that under the Constitution of 1868 and the laws of the State, boards of county commissioners are provided for each and every county in the State, who are vested with jurisdiction over roads, highways, ferries, and in all matters relating to taxes, disbursements of money for county purposes, and in every other case that may be necessary to the internal and local concerns of the respective counties; and that the joint resolution of 1885, appointing the plaintiffs "commissioner of Newtown Cut" is in conflict with this provision, and is unconstitutional, null, and void.

The case came up for trial before Judge Witherspoon. After the pleadings and evidence were read, the defendants demurred orally to the complaint, upon the ground that it showed upon its face that the plaintiffs claimed to have been created a board of commissioners of Newtown Cut by joint resolution of the legislature, which, being in conflict with section 19, article IV., of the Constitution, is unconstitutional, null, and void. After argument, the judge passed the following order: "After reading the pleadings and hearing argument of counsel, it is ordered, that the oral demurrer interposed by the defendants, the city council of Charleston, and the county commissioners of Charleston County, upon the ground that the act of 1885, creating the plaintiffs a 'board of commissioners of Newtown Cut,' is in violation of section 19, article IV., of the Constitution of this State, and therefore unconstitutional, be sustained and the complaint herein be dismissed."

From this order the plaintiffs appeal upon the following exceptions: "1. His honor erred in dismissing the complaint upon

oral demurrer, upon a ground involving the legal capacity of plaintiffs to sue. 2. His honor erred in sustaining the oral demurrer and dismissing the complaint upon the ground that the act of the legislature was unconstitutional. 3. His honor erred in holding that the act of 1885, creating the plaintiffs a board of commissioners of Newtown Cut, is in violation of section 19, article IV., of the Constitution of the State. 4. His honor erred in not holding that said act of 1885 appointed plaintiffs commissioners of Newtown Cut, and vested them with the property and funds of the former commissioners and clothed them with the right and duty to sue for and recover said property and funds," &c.

We do not understand that this is one of those cases in which a mere "general denial" fails to put in issue the right of the plaintiff to sue—like that of *Steamship Co.* v. *Rodgers*, 21 S. C., 34, or that of *Palmetto Lumber Co.* v. *Risley*, 25 *Id.*, 309. The point made here goes much deeper than that. It is true, that after the pleadings and evidence were read, the defendants verbally interposed the objection, "that the complaint did not state facts sufficient to constitute a cause of action," but then, as we understand it, they had already made the issue in their answers, that the joint resolution of 1885 was unconstitutional, and for that reason the plaintiffs were not "commissioners of Newtown Cut," or entitled to sue as such. The plaintiffs were not taken by surprise. In the case of *Insurance & Banking Co.* v. *Turner* (8 S. C., 110), Judge Willard said: "Section 169 of the Code requires that certain matters of defence shall be set forth by demurrer or answer, in order to be available to the defendant. The matters thus referred to are embraced in section 165, and are as follows: 'That the plaintiff has not legal capacity to sue, or that there is a defect of parties plaintiff or defendant, or that several causes of action have been improperly united.' If no such objection be taken, section 169 declares that the defendant shall be deemed to have waived the same. The latter part of the section allows the defences of a want of jurisdiction, and that the complaint does not state facts sufficient to constitute a cause of action to be raised by a general answer without being specially pleaded. The clear intention of these sections is, that the defendant shall

give, by his demurrer or answer, specific notice that he intends to rely on one or more of those specified defences, if he wishes to make them available. A general denial of all the facts alleged in the complaint is not a compliance with these requirements. The object of those provisions is to relieve the plaintiff from any necessity of preparing to meet such objections on the trial, unless notified by the pleadings that the defendant intends to rely on one or more of them," &c.

Here the plaintiffs were "notified by the pleadings," that the defence was, that the joint resolution of 1885 was unconstitutional, null, and void, and really that is the only question in the case. A new constitution was adopted by the State in 1868, section 19, article IV., of which declares, that "the qualified electors of each county shall elect three persons for the term of two years, who shall constitute a board of county commissioners, who shall have jurisdiction over roads, highways, ferries, bridges, and in all matters relating to taxes, disbursements of money for county purposes, and in every other case that may be necessary to the internal improvement and local concerns of the respective counties. Provided, that in all cases there shall be the right of appeal to the State courts." By section 1062 of the General Statutes, it is declared, that "all streams that have been rendered, or can hereafter be rendered, capable of being navigated by rafts of lumber or timber, by the removal thereof of accidental obstructions, and all navigable water courses and cuts, are hereby declared navigable streams, and such streams shall be common highways and forever free," &c.

Under these provisions, we cannot doubt that the county commissioners of Charleston County have exclusive jurisdiction over all the highways, ferries, bridges, and cuts, which are within the territorial limits of the county ; and that the joint resolution of 1885, appointing the plaintiffs commissioners of Newtown Cut, was inconsistent with that jurisdiction, so far as it affected Charleston County, and was, therefore, unconstitutional and void. As was said by this court in the case of *Ostendorff* v. *County Commissioners*, 14 S. C., 408 : "The board of county commissioners is one of the most important agencies created by the Constitution of 1868. It is the local administrative body of the county—both

to contract and provide payment. Before the present constitution, there existed in the State, for the purpose of facilitating local government, a number of district boards—such as commissioners of roads, of the poor, to approve public securities, and commissioners of public buildings. The powers and duties of all these boards were, by the constitution, united in the board of county commissioners, and others no less important were added, including the payment of contingent accounts, formerly paid by the State," &c. See *County* v. *Miller*, 16 S. C., 249; *Jennings* v. *Abbeville County*, 24 *Id.*, 549.

We always hesitate to declare an act of the legislature unconstitutional; but it seems to us, by creating a board of county commissioners for each county, and declaring its jurisdiction in most explicit terms, that the Constitution of 1868 meant that such jurisdiction was not to be given to any other body. As we said in the case of *Jennings* v. *Abbeville County*, *supra:* "The board of county commissioners was created by the constitution as a new body, with certain local powers, and for certain special purposes, and in such case the powers given, and the mode and manner of their exercise, are in their nature exclusive," &c.

The judgment of this court is, that the judgment of the Circuit Court be affirmed.