TOWN OF CONWAY v. ATLANTIC COAST LINE R. CO. et al.

District Court, E. D. South Carolina. March 3, 1926.

No. 275.

1. **Railroads** ⊂⇒78—Local agent is neither necessary nor proper party to suit to compel railroad to remove tracks from street.

Local railroad agent is neither a necessary nor a proper party to an action by a town to compel the railroad to remove its tracks from a street between points named.

2. **Eminent domain** ⊂⇒269—Railroad, obtaining county commissioners' permission to lay tracks in village street, could not thereafter claim as by condemnation (Gen. St. S. C. 1882, §§ 1531–1533, 1557).

Railroad, applying to board of county commissioners for permission, under Gen. St. S. C. 1882, §§ 1531–1533, 1557, to lay its tracks in main street of village, instead of proceeding to condemn right of way desired, cannot thereafter claim any rights as by condemnation.

3. **Eminent domain** ⊂⇒269—County commissioners' consent to railroad's laying track in village street held not waiver of right to require condemnation (Gen. St. S. C. 1882, §§ 1531–1533, 1557).

County commissioners' grant of permission to railroad to lay its track in main street of village *held* not equivalent to a waiver of board's right to require railroad to condemn right of way desired, since, under Gen. St. S. C. 1882, §§ 1531–1533, 1557, board had no power to waive condemnation.

4. **Railroads** ⊂⇒78—County commissioners held without authority under South Carolina statutes to grant franchise to railroad to use village street in perpetuity (Const. S. C. 1868, art. 4, § 19; Gen. St. S. C. 1882, § 602; § 611, subds. 9, 10, §§ 618–620).

Under Const. S. C. 1868, art. 4, § 19, and Gen. St. S. C. 1882, § 602, section 611, subds. 9, 10, and sections 618–620, board of county commissioners *held* without authority to barter away rights of people in highways, or to contract or grant franchise to railroad to use street in perpetuity.

5. **Railroads** ⊂⇒78—County commissioners' permission to railroad to lay tracks in street held not contract or franchise in perpetuity.

Board of county commissioners' grant of permission to railroad to lay tracks in main street of village *held* not a contract or franchise in perpetuity, assuming that board had authority to grant such a franchise.

6. **Railroads** ⊂⇒78—Town's requirement that railroad remove tracks from street held valid, whether railroad held rights by condemnation or under grant in perpetuity (Gen. St. S. C. 1882, § 1557).

Town's requirement that railroad remove tracks previously maintained in street under permission granted many years previously by board of county commissioners *held* valid, in view of changed conditions and increased traffic, whether railroad's rights be deemed to be held as in effect acquired by condemnation or under grant in perpetuity, in view of language of Gen. St. S. C. 1882, § 1557, relating to condemnation and terms of grant, both of which prohibited interference with use of highway.

7. **Estoppel** ⊂⇒62(4)—Town held not estopped to demand railroad's removal from street of tracks laid under permission of board of county commissioners before town's incorporation.

Where board of county commissioners' permission to railroad to lay tracks in village street was either permissive only, or ultra vires, *held*, town after incorporation was not estopped to demand removal of tracks because

of interference with traffic arising from changed conditions.

**8. Estoppel ⟨⟩62(4)—Estoppel cannot be predicated on an ultra vires act.**

The doctrine of estoppel has no application, where the act relied on as creating an estoppel was ultra vires.

**9. Railroads ⟨⟩78—County board's permission to railroad to lay tracks in street held not irrevocable license coupled with an interest (Gen. St. S. C. 1882, §§ 1531-1533, 1557).**

County commissioners' grant of permission to railroad to lay tracks in street of village *held* not a license coupled with an interest, and hence irrevocable by town later incorporated, since board, under Gen. St. S. C. 1882, §§ 1531-1533, 1557, had no right to grant any interest in the right of way.

**10. Estoppel ⟨⟩62(4)—Sale of railroad having track on town street to purchaser, relying on physical connection made by such track, held not to estop town from requiring removal of track.**

That railroad having track through main street of town was sold to another line, which relied on a physical connection made by the track on the street, *held* not to estop the town from subsequently requiring removal of track from street.

**11. Railroads ⟨⟩78—Transportation Act held not to preclude town from requiring removal of railroad tracks from street (Transportation Act 1920, § 402, subd. 18 [Comp. St. § 8563]).**

Transportation Act 1920, § 402, subd. 18 (Comp. St. § 8563), prohibiting abandonment of any portion of a line of railroad without permission of Interstate Commerce Commission, *held* not to preclude town from requiring railroad to remove from street tracks previously constructed under permission of board of county commissioners before incorporation of town.

**12. Railroads ⟨⟩78—One year held reasonable time for railroad's removal of track from street.**

One year *held* reasonable time for railroad's removal of approximately 1,500 feet of track from main street of town.

In Equity. Suit for mandatory injunction by the Town of Conway against the Atlantic Coast Line Railroad Company and another. Suit dismissed as to defendant Mishoe, and decree for plaintiff against defendant Railroad Company.

Robt. B. Scarborough, Sherwood & MacMillan, M. A. Wright, and J. O. Norton, all of Conway, S. C., for plaintiff.

Thos. W. Davis, of Wilmington, N. C., and F. L. Willcox and A. L. Hardee, both of Florence, S. C., for defendants.

ERNEST F. COCHRAN, District Judge. [1] The plaintiff, the town of Conway, brought this action for a mandatory injunction to compel the defendant the Atlantic Coast Line Railroad Company to cease operating its trains along Main street in the town, from Second avenue to a point between Fifth and Sixth avenues, where the track leaves the street, and to remove its track from the street between the points named. The Atlantic Coast Line Railroad Company has filed its answer, setting up numerous defenses which will be hereinafter stated. The defendant J. T. Mishoe has not answered, but he is merely the local agent of the defendant Atlantic Coast Line Railroad Company, and is really neither a necessary nor a proper party to the action, and the complaint as to him must in any event be dismissed.

The town of Kingston was laid out in 1734 by Alexander Skene and Chief Justice Wright, acting under an order of King George II. The name of the town was changed by the Act of the Assembly of South Carolina of December 19, 1801 (5 St. at Large, p. 407), to Conwayborough, and later to Conway. On December 24, 1885, the Wilmington, Chadbourn & Conway Railroad Company was chartered by an act of the General Assembly (19 Stat. S. C. p. 203). On November 16, 1887, the Wilmington, Chadbourn & Conway Railroad Company filed with the board of county commissioners for Horry county (in which the town of Conway is situated) the following petition:

"To the Honorable the Board of County Commissioners for Horry County, South Carolina:

"The Wilmington, Chadbourn & Conway Railroad Company respectfully shows:

"I. That it is a body corporate and duly chartered by the Act of the General Assembly of the State of South Carolina approved on the 24th day of December, 1885, and has the right of way from the North Carolina line to the Atlantic Ocean.

"II. That it proposes to make the village of Conway, in said county of Horry, its present terminus, and by the terms of its engagements with Conway township, which has subscribed to the construction of the road, the company is to build the same to the Waccamaw river, at Conway.

"III. That after making several surveys and fully considering the matter, it appears that the most suitable and practicable route through said village of Conway to the Waccamaw river is the Main street of said village from a point near the Burroughs Academy building, because—

"First. The said Main street is sufficiently wide to contain the track of the road with-

out at all interfering with its use as a highway.

"Second. There will be no necessity for any alteration or excavation of said street for the purpose of passing along same; and

"Third. There will be no interference with the private property of any of the citizens of the village.

"IV. That in running along the said Main street the track will cross the following streets, viz.:

"(1) The street leading by the Lewis grist mill to Kingston Lake;

"(2) The street leading by the courthouse to the bridge across said lake; and

"(3) The street passing south of the Pope House to the river.

"V. That, while it is not deemed absolutely necessary to obtain a decree of your honorable body granting permission to the petitioner so to use said highway, yet your petitioner prefers to have your sanction to said use.

"Wherefore it prays your honorable board to make a decree granting said railroad company permission to construct its track on said Main street or highway in said unincorporated village of Conway, as hereinbefore indicated. And the petitioner will ever pray, and so forth.

"Nov. 16, 1887.

"W. H. Chadbourn,
"President of the Wilmington, Chadbourn & Conway Railroad Company."

On the 16th of November, 1887, the board of county commissioners of that county duly considered the said petition and made the following decree:

"On hearing the petition of the Wilmington, Chadbourn & Conway Railroad Company, asking permission of this board to build its track on a certain portion of the Main street in the unincorporated village of Conway, and it appearing that the construction of the said track will not in any way interfere with the use of said Main street as a public highway or obstruct the same:

"It is hereby resolved and decreed by the board of county commissioners of Horry county that the Wilmington, Chadbourn & Conway Railroad Company have the permission of this board to build its track on and along the Main street of the village of Conway, beginning at a point near the Burroughs Academy building, running its length to where the said street turns towards the river, and crossing the street named in the petition, upon the following conditions:

"(1) That the said track be so built as that it will not interfere with or obstruct its use as a highway.

"(2) That all the crossings of the streets named in said petition be so made as not to interfere with use as highways.

"Done at special meeting, November 16, 1887.

"B. G. Collins.
"David Rabon.
"J. R. Suggs."
"Attest: Robert B. Scarborough,
"Clerk of Board.

At the time this decree was made, Conway was still an unincorporated village of about 400 inhabitants, having a relatively small trade and traffic, and Main street in the village had been dedicated to public use as a highway, and had been so dedicated since the year 1734 continuously as a highway and street of said village, up to the time of the incorporation of the village as the town of Conway in 1902.

The Wilmington, Chadbourn & Conway Railroad Company, about the year 1887, pursuant to and by virtue of the authority given by the board of county commissioners, laid its track so as to enter Main street in the village of Conway between Sixth and Fifth avenues, and thence down the center of Main street to First avenue, and the track has occupied that location down to the present time. At the same time it built its railroad station and terminal facilities near the end of Main street, just beyond Second avenue.

The town of Conway was incorporated under the general laws of the state in 1902. At that time, Main street was being used as a street and by the railroad for its track, and has continued to be so used up to the present time. On the 5th day of November, 1912, the town council of Conway passed the following ordinance:

"An Ordinance.

"Be it ordained by the mayor and wardens of the town of Conway in council assembled:

"Sec. 1. That, except as hereinafter provided, the use of the streets and avenues of the town of Conway by any person, firm, or corporation for the laying of iron rails and tracks for use in the operation of locomotive engines and cars for the transportation of freight or passengers is hereby declared to be unlawful, a nuisance, and contrary to the good order, quiet, and safety of the people of the said town and public generally.

"Sec. 2. That the railroad track now laid and used by the Atlantic Coast Line Railroad Company, Conway Coast & Western Rail-

road Company, and Conway Lumber Company, its and their licenses, on Main street of the town of Conway, between the intersection of Second and Fifth avenues with said Main street, be and is hereby declared a nuisance, hurtful to the peace, order, safety, and quiet of said town, illegal interference with and an obstruction to the uses of said street by the inhabitants of the said town and public generally, a menace to the property of the said town and its citizens along said street, and to the safety of the people using said street as a thoroughfare and highway.

"Sec. 3. That the permit, license, resolution or contract under which the said railroad companies claim the right to use the said street between said points is hereby annulled and revoked, and the said Atlantic Coast Line Railroad Company, Conway Coast & Western Railroad Company, its and their licensees, Conway Lumber Company, their and each of their servants, agents, and employees, are hereby forbidden to run, use, or operate any railroad train, locomotive, or cars on said track.

"Sec. 4. That each or every person, firm, or corporation convicted of any violation of any of the provisions of this ordinance shall on conviction be punished by a fine of not less than ten dollars ($10.00) or more than one hundred dollars, or by imprisonment for not less than ten days nor more than thirty days for each and every offense: Provided, that nothing herein contained shall be construed to prohibit the town council of the town of Conway from allowing the operation of locomotives and cars on said Main street for use in the removal of said track, nor from granting licenses under proper safeguards for the use of side streets or crossing avenues in unfrequented places by the railroad tracks, locomotives, and cars.

"Sec. 5. That this ordinance shall take effect and be of force on and after December 1, 1912.

"Done and ratified this the 5th day of November, A. D. 1912."

On the same day the town council also passed another ordinance, as follows:

"An Ordinance.

"Be it ordained by the mayor and wardens of the town of Conway in council assembled:

"Sec. 1. That from and after the passage of this ordinance no person, firm or corporation owning, leasing or operating railroads within the corporate limits of the town of Conway shall allow any engine, log car, freight or passenger car, loaded or otherwise, to remain standing for a longer time than one minute on any track on Main street of said town at any point between the intersection of Second and Fifth avenues with said Main street.

"Sec. 2. That no part or section of railroad track on Main street of said town between Second and Fifth avenues shall be used for switching or shifting cars back and forth.

"Sec. 3. That any person, firm or corporation convicted for the violation of the foregoing provisions of this ordinance shall be subject to a fine of not less than five dollars nor more than twenty dollars, or to imprisonment for not less than two nor more than ten days for each and every offense. And each and every person in charge of any train, engine or car or cars found standing on said street within the aforesaid limit for longer time than one minute, or using said track for switching purposes, shall be liable to arrest and prosecution hereunder, separately or jointly with the person, firm or corporation owning or operating such engine or cars, and upon conviction shall be liable to like punishment.

"Sec. 4. That it shall be the duty of the police officers of the town of Conway to enforce the provisions of this ordinance and to arrest without warrant if within his view, any person or persons found so offending.

"Done and ratified this the 5th day of November, A. D. 1912."

Neither of these ordinance has been complied with by the defendant the Atlantic Coast Line Railroad Company. After the Wilmington, Chadbourn & Conway Railroad Company had constructed its line of railroad, and laid its track along Main street, and established its station and terminal facilities at a location generally south of and beyond that portion of its track along the county road then known as Main street, the defendant the Atlantic Coast Line Railroad Company for value purchased and acquired all of the franchise rights and property of the Wilmington, Chadbourn & Conway Railroad Company, and is now the owner thereof.

On the 1st day of July, 1912, the Atlantic Coast Line Railroad Company purchased a line of railroad known as the Conway Coast & Western Railroad, extending from Myrtle Beach, in Horry county, to Conway, and from Conway in the opposite direction to Aynor, in Horry county. If the Atlantic Coast Line Railroad Company's track in Main street is removed, the physical connection between its main line and that portion

of the line of the Conway Coast & Western Railroad extending from Conway to Myrtle Beach will be broken.

From the testimony it appears that the defendant has no property which can be used by it for a right of way from its line at some point north of its entrance upon Main street to a connection with the Myrtle Beach branch, or its bridge over the Waccamaw river, other than the line through Main street. It also appears that, although negotiations have been under way for many years, neither the town of Conway nor any of its inhabitants has ever tendered to the defendant a right of way for a line elsewhere than in Main street. If the defendant should be compelled to remove its track from Main street, and thereby break the physical connection with its Myrtle Beach line, it would be under the necessity, in order to reach its depot and to maintain the connection with the line to Myrtle Beach, of condemning a right of way over some other line from a point north of the present intersection of Main street and its line to Chadbourn to the bridge over the Waccamaw river.

Main street is 66 feet in width. It is bisected by the railroad track for a distance of about 1,500 feet. On each side of the street, business houses have been erected. The population of the town had quadrupled at the time of the passage of the ordinances of November 5, 1912, as compared with the population at the time the board of county commissioners made their decree in 1887. The population of the town now is about 2,000. The burden of traffic on the street since the decree was made has multiplied many times. The street is now a part of state highways Nos. 38 and 40 of the South Carolina Highway system. The selection of this street by the state highway commission as a part of the state highways mentioned was made long after the railroad was constructed through Main street, and when it was being regularly used by the defendant in the operation of its trains. The state highway department could have selected parallel streets for designation as state highways, if they had thought it was desirable to do so. Main street is used, not only by local traffic, but also by traffic from a distance, in going to and from Myrtle Beach and other coastal resorts to which Conway is the gateway.

For the first few years after the decree of the commissioners was made there were few trains passing over this track during a period of 24 hours; but now there are 10 trains that pass over it on Main street during each 24-hour period. At the present time, when automobiles are parked on the side of the street, there is some difficulty and danger in vehicles passing along the street between the parked automobiles and a train moving along or standing on the track. It is necessary, in the operation of the trains and the discharge of passengers, that trains shall at times stand for short periods upon the track in Main street.

Some of the trains passing along the street are at times heavily loaded and necessarily create considerable smoke and at times cinders, and also cause some concussion and jar to the highway and the buildings adjacent thereto. It does not appear, however, that the operation of the trains causes any more smoke, cinders, or vibration than is usual and to be expected under such circumstances.

When the town of Conway was incorporated in 1902, it became invested by section 1985, vol. 1, of the Code of Laws of South Carolina of 1902, with all the powers, rights, and privileges given to the board of county commissioners. The town contends that the so-called decree of the board of county commissioners is at the most merely a permission, and not a grant of a franchise or contract, and that the grant of such a franchise or the making of such a contract by the board would be an ultra vires act, and therefore void, and that the town, having succeeded to the rights and powers of the board of county commissioners, has the right, when the public interests demand, to revoke absolutely the permission theretofore given. The town also contends that, even if it be conceded that the permission given constituted a contract or franchise, nevertheless, in the exercise of its police power, it had the right by the ordinances set forth to require the track to be removed.

The contentions of the defendant are that the decree of the board is an irrevocable contract or grant of a franchise in perpetuity, and that the town cannot revoke the same, nor can it, under the guise of the police power, require the defendant to remove its track without violating the Constitution of the United States and of the state, alleging that such action would impair the obligation of the contract and deprive it of its property without due process of law. The defendant also contends that its predecessor had a right to condemn the highway in question, and that the action of the board of county commissioners in any event amounted to a waiver of any right to require condemnation. The defendant also contends that the town is estopped from now requiring the removal of

the track. The point is also made that under the act of Congress of 1920, known as the Transportation Act (41 Stat. 456), the defendant cannot abandon any part of its track without a proper certificate of approval from the Interstate Commerce Commission, which has not been given.

By section 14 of the Act of the Assembly incorporating the Wilmington, Chadbourn & Conway Railroad Company (19 Stat. S. C. 207), that company was given every right necessary for the acquiring of lands or rights of way and the benefit of every process or proceeding under the general Railroad Law as contained in chapter 40 of the General Statutes of South Carolina of 1882. Under its charter, therefore, the railroad company had ample power to condemn lands of private individuals in the usual manner provided by the statutes of the state. In reference, however, to the condemnation or use of existing highways, only four sections of the statutes then in force have been called to the attention of the court, and after diligent search the court has not been able to find any other section. These sections are 1531, 1532, 1533, and 1557 of the General Statutes of South Carolina of 1882.

Section 1531 has reference to the laying out of a railroad across a highway or other way. By section 1532, a railroad corporation is given the power to "raise or lower any highway * * * for the purpose of having its road pass over or under the same; but before proceeding to cross, alter, or excavate for the purpose of crossing the way," it must obtain from the county commissioners a decree prescribing what alterations may be made, etc., with the further proviso that, where the highway is within the corporate limits of any city, town, or village, the permission must be obtained from the proper municipal authorities thereof, instead of from the county commissioners. By section 1533, a railroad corporation may alter the course of a highway or other way other than a street in any incorporated town or village for the purpose of facilitating the crossings of the same by its road or permitting its road to pass at the side thereof without crossing, upon obtaining a decree of the county commissioners prescribing the manner and time of such alteration, etc.

In the case at bar, no question arises in reference to the crossing or the raising or lowering of any highway, the altering or changing of its course, or permitting the railroad to pass at the side thereof, and it is obvious, therefore, that sections 1531, 1532,

and 1533 have no application. Section 1557, however, is as follows:

"Sec. 1557. No lands or right of way which have heretofore been, or may hereafter be, procured for the construction or use of any highway, shall be considered exempt from liability to condemnation; but the right of way over said land and across or along such right of way may be condemned for the construction of any other highway: Provided, that in the construction of such other highway there be no hindrance to the use and enjoyment of the highway for which such lands or right of way were previously procured; and in all such cases notice of the application for a jury shall be served upon the president of the corporation whose lands or right of way shall be required, or upon any director or local agent of the corporation."

[2] Under section 1557, the Wilmington, Chadbourn & Conway Railroad Company had the right to condemn the highway in the case at bar, provided that, in the construction of its track there would be no hindrance to the use and enjoyment of the highway by the public. But that company did not choose to exercise its right of condemnation. It chose instead to apply to the board of county commissioners for permission to lay its track in Main street of the village of Conway, and it therefore cannot claim now that it has acquired any rights by condemnation. The defendant has cited to the court numerous cases as to the effect of a railroad company laying its track on lands of private individuals without obtaining formal condemnation, and the court has read and considered them carefully, but they have no application here, when the rights of the public are involved.

[3] The defendant also contends that the action of the board in passing the decree in question amounted to a waiver of the right to require condemnation. But from an examination of the powers of the board, as I shall set them forth later, I do not think the board had any power to waive condemnation. The theory of the defendant is that, the board having waived condemnation, the rights of the defendant are to be tested as if condemnation had been actually had. Inasmuch as the board had no power to waive the right of condemnation, this theory is not tenable. I must hold, therefore, that the defendant's predecessor acquired no rights in Main street in the town of Conway by condemnation.

[4, 5] The main defense, however, of the defendant, is that the decree of the board of

county commissioners, when acted upon by the Wilmington, Chadbourn & Conway Railroad Company by laying its track in Main street, constituted an irrevocable contract or franchise, which neither the board nor the town has now the right to impair or destroy. In the considerattion of this question, the first question to be determined is whether or not the board of county commissioners had any power to make such a contract, or in other words to grant a franchise.

At the time the decree of the board of county commissioners was made, the Constitution of South Carolina of 1868 was then in force. Prior to. that Constitution there existed in this state, for the purpose of facilitating local government, a number of district boards, such as commissioners of roads, of the poor, to approve public securities, and commissioners of public buildings. The powers and duties of all these boards .were by the Constitution united in the board of county commissioners, and others no less.important were added, including the payment of contingent accounts formerly paid by the state. Ostendorff v. County Com'rs, 14 S. C. 408; Richland County v. Miller, 16 S. C. 249; Walpole v. City Council, 32 S. C. 547, 554, 555, 11 S. E. 391.

Section 19, art. 4, of the Constitution of 1868, creating the board of county commissioners, is as follows:

"Section 19. [*County Commissioners*]. The qualified electors of each county shall elect three persons for the term of two years, who shall constitute a board of county commissioners, which shall have jurisdiction over roads, highways, ferries, bridges, and in all matters relating to taxes, disbursements of money for county purposes, and in every other case that may be necessary to the internal improvement and local concerns of the respective counties: Provided, that in all cases there shall be the right of appeal to the state courts."

The Supreme Court of South Carolina has held that the powers thus conferred are broad and extensive, but are not unlimited. Duke v. Williamsburg, 21 S. C. 414, 416.

The duties and powers of the board of county commissioners at the time of the decree in question are further defined and enumerated in the General Statutes of South Carolina of 1882, §§ 599 to 641, inclusive. From the constitutional provision and these sections, as was said by the Supreme Court in Ostendorff v. County Com'rs and Walpole v. City Council, supra, it appears that that board is one of the most important agencies created by the Constitution of 1868,

and is the local administrative body of the county, both to contract and provide payment. The only sections that refer in any way to the authority of such boards over roads or highways are sections 602, 618, 619, section 611, subdivisions 9 and 10, and section 620.

Section 602 provides that county commissioners elected in pursuance of section 19, art. 4, of the Constitution, shall have jurisdiction over roads, highways, ferries, and bridges, and all matters relating to taxes and disbursement of money for county purposes, in accordance with the provisions of law, and in every other case that may be necessary to the internal improvement and local concerns in their respective highways. By section 618 the county commissioners are directed to "take charge of and superintend the repair of the highways in the county." By section 619 they may, on application to them for such purpose, permit the erection of gates upon highways over the respective highways, wherever the same in their judgment may be expedient and not detrimental to the public interests, the person owning or erecting such gates to keep them in good order on pain of being indicted for a nuisance in case they fail to do so. By subdivision 9 of section 611 they are authorized to appoint special commissioners to lay out public highways in those cases where they shall be satisfied that the road applied for is important, etc., and by subdivision 10 of the same section they are authorized to appoint a superintendent of highways for each highway district, each township being a highway district. By section 620 they are given the power to provide for the payment of the special commissioners appointed under subdivision 9 of section 611, and it is also provided that the decisions made by the special commissioners may be appealed from and reviewed in the same manner and with like authority as is allowed by law from the acts of county commissioners. Section 620 further provides that the work to be laid out by said special commissioners, or the same as settled on appeal, shall be recorded, opened, and worked as public highways, the same as other highways: Provided that this power to open new highways shall not be exercised in any incorporated city, town, or village.

By the act of the General Assembly of 1882 (17 St. at Large S. C. p. 891) the powers and duties of county commissioners were further defined, but that act makes no reference to roads or highways, and is only adverted to for the purpose of showing the general nature of the powers and duties of such

boards. Upon consideration of the history of these boards, the provision of the Constitution creating them, as construed by the Supreme Court of South Carolina, and the various powers conferred and duties imposed upon them by the sections of the General Statutes referred to, it is clear that such boards are bodies of limited jurisdiction. They are the general administrative agents of the county. They have charge and control and supervision of the highways of the state, and may lay out new highways, and may alter or repair old highways.

But we search in vain for any trace of any intention on the part of the framers of the Constitution or the Legislature to confer upon them the power to barter away the rights of the people in the highways or to contract or grant franchises to railroads in them in perpetuity. It has been held by the Supreme Court of South Carolina that municipalities hold their streets and highways in trust for the public and cannot sell or alienate them. Crocker v. Collins, 37 S. C. 327, 334, 15 S. E. 951, 34 Am. St. Rep. 752; South Bound v. Burton, 67 S. C. 515, 46 S. E. 340. See, also, Spencer v. Mahon, 75 S. C. 232, 55 S. E. 321.

The defendant claims that the board had the right to grant this franchise in perpetuity, but no case has been cited sustaining that position, nor has the attention of the court been called to any statute or provision of the Constitution authorizing such action. I am satisfied that the framers of the Constitution of 1868 and the Legislature in defining the powers and the duties of these boards under that Constitution, if they had intended that the board should have such power over the highways of the state, would have said so in explicit terms. A careful study of the whole subject is convincing that the power of such boards over the highways is extremely limited, and cannot be extended by implication to embrace the high power of granting a franchise in perpetuity. Therefore, if the decree of the board in this case should be considered as a contract or franchise in perpetuity, this court would be compelled to hold such an action ultra vires and void, and that the town, as the representative of the public, would have the right to require the removal of the track as an interference with the highway.

But I do not construe the decree of the board as a contract or franchise. The decree on its face purports only to grant permission. This was in accordance with the prayer of the petition to the board, which did not ask for anything but permission for the railroad to lay its track. Whether the board had even the power to grant a mere temporary permission to lay the track in the highway it is not necessary to decide. Assuming that they could grant such permission, it constituted simply a license or permit for the use of the street by the railroad as long as it did not interfere with its use as a highway, and could be revoked either by the board or by their successor, the town of Conway, at any time that the public interest demanded. The evidence before the court is sufficient, in view of the changed conditions in Conway, to support the action of the town in demanding in the public interests that the track be removed, and its action cannot be deemed arbitrary.

[6] There is another view by which the position of the town may be sustained. Section 1557, in reference to condemnation of a right of way, provides that in such construction there shall "be no hindrance to the use and enjoyment of the highway," and the decree of the board provides that "the said track be so built as that it will not interfere with or obstruct its use as a highway." These conditions, both in the statute and in the decree of the board, cannot be confined merely to the situation existing at the time the track is laid. They must be deemed prospective also. I am clearly of opinion that, both by the statute and the decree, any rights of the plaintiff's predecessor are subject to the condition that, if in the future the situation shall be such that the track does act as a hindrance or obstruction or interfere with the use of the street as a highway, it would be within the power of the municipal authorities to invoke that condition and cause the track to be removed. The evidence satisfies me that at the present time, owing to the change in the situation, the use of the track by the railroad does interfere with and is a hindrance and obstruction to the use of the street as a highway. Even if the highway had been condemned under the statute (which it has not), and even if the decree be assumed to give rights in perpetuity, nevertheless the changed situation warrants the town in demanding, under the conditions made a part both of the statute and the decree of the board, that the track be removed as an interference with the highway.

[7, 8] The next question is in reference to the defendant's claim of estoppel. If, as I have shown, the rights of the defendant in the street were merely permissive, there can surely be no estoppel. The defendant's predecessor knew, when it laid its track in the street, that it had nothing more than a tem-

porary permission. If the decree of the board be construed as a contract or franchise, it would be, as I have shown, ultra vires and beyond their power, and in the case of public rights the doctrine of estoppel has no application, where the act relied upon would be ultra vires. See Bangor v. Bay City Traction Co., 147 Mich. 165, 110 N. W. 490, 7 L. R. A. (N. S.) 1187, 118 Am. St. Rep. 546, 11 Ann. Cas. 293. See, also, note to this case in 11 Ann. Cas. 295, 296. The cases cited in this note show that the general rule is that, where municipal authorities have no power to grant the rights in question, estoppel is not available.

[9] The defendant also claims that the decree of the board constitutes in any event a license coupled with an interest, and therefore cannot be revoked. The numerous cases cited in reference to licenses granted by private individuals have no application to this case. Here the board had no power to grant any interest in the right of way. Such an act would be ultra vires, and therefore the defendant has no legal interest in the right of way which would entitle it in any event to invoke the doctrine in reference to a license coupled with an interest. Any interest in the land which the defendant's predecessor may have acquired as against the adjacent landowners, cannot be coupled with the permit given by the board.

The original entry to lay the track in question was by virtue of the decree of the board, and this was merely permissive. The defendant does not claim to have entered under any other right. At no time has it disavowed claiming under the action of the board, and sought to claim under some other right. Such being the case, no claim can be made by adverse possession, and, indeed, I do not understand that the defendant makes that claim.

The defendant relies very strongly upon the case of Louisville v. Cumberland Telephone Co., 224 U. S. 649, 32 S. Ct. 572, 56 L. Ed. 934. In that case, the telephone company was authorized by the Legislature of Kentucky to maintain its system in any highway, street, or alley of the city of Louisville with and by the consent of the general council of the said city. The city gave its unqualified consent, and thereafter sought to withdraw it. The Supreme Court held that, after the city's consent was given, the charter franchise which had been granted by the Legislature became fully operative, and that the company occupied the streets, *not under a license from the city of Louisville, but by virtue of a grant from the state of Kentucky,* and that the franchise *granted by the Legislature* could not be repealed or nullified by any ordinance of the city.

In the case at bar the Legislature has never granted to the defendant's predecessor any franchise in the street, but merely gave a general right to condemn highways, and, as I have already pointed out, no condemnation was had. Moreover, in the case of Louisville v. Cumberland, the city was directly authorized to give its consent to the franchise, while in the case at bar the board of county commissioners had no authority either to grant the franchise or to consent to its being granted. If in the case at bar the Legislature had granted to the defendant's predecessor the right to lay its track in the street of the town of Conway, provided the board of county commissioners should consent thereto, then the case of Louisville v. Cumberland would be in point. But such is not the fact.

The defendant also relies strongly upon the case of Grand Trunk Western Ry. Co. v. South Bend, 227 U. S. 544, 33 S. Ct. 303, 57 L. Ed. 633, 44 L. R. A. (N. S.) 405. In that case the statute of Indiana provided that the railroad might be built through any city that would give its consent. The city council of South Bend by ordinance granted the right to lay a double track over a part of a certain street. The double track was laid for a part of the way, and when it was attempted to be extended the city sought to withdraw the right. But it was held that the city had *legislative authority* to pass the ordinance in question, and that it constituted a contract, and was therefore binding. The distinction between that case and this case is that in that case the city *had authority of law* for its act, while in the case at bar the board of county commissioners *had no such authority.* In the case of Grand Trunk, etc., v. South Bend, the Supreme Court uses the following language: "The assignment of error on this ruling presents a question which this court is bound to decide for itself, independent of decisions of the state court. Northern Pacific Ry. v. [Minnesota ex rel.] Duluth, 208 U. S. 583, 590, 28 S. Ct. 341, 52 L. Ed. 630]. *In doing so it is necessary first to determine whether the city had legislative authority to pass the ordinance, for, if there was no such power, the grant was void, and the repeal was not so much the impairment of the obligation of a contract as the withdrawal of an assent to occupy the streets.*" (Underscoring mine.) Grand Trunk Western Ry. v. South Bend, supra.

To paraphrase the language of the Su-

preme Court, if the board of county commissioners had no power to grant the franchise, the grant was void, and the revocation by the town of Conway was not so much an impairment of the obligation of the contract as the withdrawal of an assent to occupy the street. If the conclusion I have reached, to the effect that the board of county commissioners had no authority to grant such a franchise is correct, then the case of Grand Trunk, etc., v. South Bend, so far from being an authority for the position of the defendant, is an authority in favor of the position of the town.

[10] The defendant contends that, inasmuch as it purchased the Conway Coast & Western Railway to Myrtle Beach, relying on the physical connection made by that road with its main line through the track on Main street, it cannot now be required to take up its track on Main street and thereby break the physical connection. I am at a loss to understand how the rights of the town could be affected by this purchase of the Myrtle Beach branch. When the defendant purchased the Myrtle Beach branch, it knew all the facts upon which any supposed rights to use Main street rested. It knew, or ought to have known, that the board of county commissioners had no power to grant a franchise. It knew that the decree of the board was merely permissive, and conditioned upon the track being so laid that it would not interfere with the use of the street as a highway. By the purchase of the Myrtle Beach branch it acquired no higher rights in Main street than it had before. There is nothing before the court to show that the town authorities had anything whatsoever to do with the purchase of the Myrtle Beach branch, or encouraged it in any way. In such circumstances, I do not think that the town authorities are estopped by that purchase from requiring the removal of the track. The fact that, in order to make a physical connection with its Myrtle Beach branch, the defendant may have to condemn lands elsewhere than in Main street, cannot affect the rights of the town.

The town's claim is based upon the further contention that, even if it should be decided or assumed that the decree of the board constituted a contract or franchise, nevertheless the city would have the right under its police power, by the ordinances set forth, to require the defendant to remove its track, and cites numerous decisions in support of the police power, but mainly relies upon the case of Denver & Rio Grande Ry. Co. v.

Denver, 250 U. S. 241, 39 S. Ct. 450, 63 L. Ed. 958. To this position of the town the defendant counters by asserting that the town cannot, under the guise of the police power, impair the obligation of a contract, or deprive it of its property without due process of law, and cites numerous cases, but mainly relies upon Louisville v. Cumberland, supra, and Grand Trunk, etc., v. South Bend, supra.

If the decree of the board constituted a contract or franchise which they had power to grant, it must be admitted that the case of Denver & Rio Grande v. Denver, supra, very strongly supports the contention of the town; but it must also be admitted that the cases of Louisville v. Cumberland, supra, and Grand Trunk, etc., v. South Bend, supra, very strongly support the position of the defendant on this point. But I do not think it necessary now to attempt to reconcile those cases, or to decide whether or not the town had the right under its police power to require the removal of the track, even though the decree of the board be regarded as a contract or franchise. I prefer to rest my decision on the ground that the decree of the board, if construed as creating a contract or granting a franchise in perpetuity, would be ultra vires, and that its action was merely permissive and for a temporary use, revocable in its nature. This case will no doubt be reviewed by an appellate court, and the parties may there present their views upon this question of the rights claimed under the police power (which is left open by this decree), if they be so advised.

[11] The defendant also contends that under the Transportation Act of 1920 (Act Cong. approved Feb. 28, 1920, 41 Stat. 456), as construed by the Supreme Court of the United States in Dayton-Goose Creek R. R. Co. v. U. S., 263 U. S. 456, 44 S. Ct. 169, 68 L. Ed. 388, 33 A. L. R. 472, R. R. Commission of California v. Southern Pacific Co., 264 U. S. 331, 44 S. Ct. 376, 68 L. Ed. 713, and New England Divisions Case, 261 U. S. 184, 43 S. Ct. 270, 67 L. Ed. 605, it is not lawful for it now to abandon any part of its right of way without a certificate of approval from the Interstate Commerce Commission. By subdivision 18 of section 402 of the Transportation Act (41 Stat. 477 [Comp. St. § 8563]) it is provided that no carrier or railroad subject to the act shall abandon all or any portion of a line of railroad, or the operation thereof, unless and until there shall have first been obtained from the Commission a certificate that the present or future public convenience and necessity per-

mit of such abandonment. It is conceded that no such certificate has been given in the case at bar.

The theory of the defendant is that the Transportation Act, as construed by the cases referred to, constituted a new departure, and sought affirmatively to build up a system of railways prepared to handle promptly all the interstate traffic of the country, and that the power to order the abandonment of any track is now lodged solely in the Interstate Commerce Commission, and no change can be made without its consent. But I do not construe the act to apply to a case like the one at bar. The defendant does not seek to abandon a portion of its track. Nor does the town seek to compel it to abandon a portion where it has a legal right to remain. The act of Congress was intended to apply to those cases where the railroad company seeks to abandon a portion of its line of railroad, and possibly where it is sought to compel it to make such abandonment; but it was not intended to apply to those cases where the railroad is a trespasser, or where the railroad's occupancy is only by permission, and such permission has been revoked.

When the town in this case revoked the permission theretofore given to occupy the street, the railroad company then had no further right in the same. It may be doubted whether Congress could constitutionally deprive the town of its right to require the defendant to remove its track in such circumstances from its street, and certainly, if such a construction of the act as would render it unconstitutional can be avoided, it should be done. My view is that the act was not intended to apply to a case where the defendant's rights in the premises had ceased, and that no certificate from the Interstate Commerce Commission is necessary, and that this court has full jurisdiction to determine the rights of the parties, and to require the removal of the track if the railroad has no further legal right to keep it there.

My conclusion, therefore, is that the decree of the board of county commissioners is not to be deemed a grant of a franchise in perpetuity, and that, if so construed, it would be ultra vires, null, and void, but is to be deemed a mere temporary permission, which could be withdrawn, either by the board or their successor, the town of Conway, and that the ordinances above set forth of the town of Conway are valid in so far as they revoke the permission given by the decree of the board, and that the plaintiff is entitled to a mandatory injunction requiring the defendant to remove its track from Main street in the town of Conway within a reasonable time, and cease operating its trains along that street.

[12] The only remaining question is what would be a reasonable time to allow for the removal of the track. Upon that point there has been no testimony or argument before the court. It was conceded that, if the plaintiff was entitled to have the track removed, it would be entitled to a mandatory injunction, and it was also conceded that the defendant should be allowed a reasonable time within which to comply with the order of the court. There being no testimony upon the subject, the court must draw its conclusions from the facts of the case and its general knowledge of the situation. In view of the fact that this controversy has been pending between the parties since the adoption of the ordinances in question in 1912, and the other circumstances of the case, I have come to the conclusion that one year would not be an unreasonable length of time to allow the railroad for taking up and removing the track in question. However, this will be without prejudice to the right of either party to move, upon due notice and proper showing that a shorter or longer time would be reasonable, for an order changing the period of a year herein fixed, as they may be advised, and without prejudice to the right of the defendant, in case it cannot remove its track within the period stated, or within such other time as may be hereafter fixed, to apply to the court upon due notice for such extension of time as may be reasonable.

It is therefore ordered, adjudged, and decreed that the defendant Atlantic Coast Line Railroad Company be and it is hereby enjoined and required, within a period of one year from the date of this decree, to remove its track from Main street in the town of Conway, between First avenue and the point where it leaves Main street between Fifth and Sixth avenues, and cease operating its trains in said portion of Main street: Provided, however, that either party may upon due notice apply to the court for an order allowing a shorter or longer time, upon proper showing that the same is reasonable, as either party may be advised, and with the further proviso that, in case the defendant cannot within the period allowed remove its track, it may apply to the court upon due notice and proper showing for a further reasonable extension of the time herein or hereafter fixed.

It is further ordered that the case as to the defendant J. T. Mishoe be and the same is hereby dismissed.

NOTE.—The defendant appealed in this case, and by agreement of attorneys the appeal was dismissed under rule 20. See A. C. L. R. R. Co. v. Town of Conway (C. C. A.) 15 F. (2d) 1008. After the dismissal, the defendant, upon due notice, applied for and obtained from the District Court a further extension of time within which to remove its track, and within the extended period the track was removed in compliance with the District Court's decree.