## MILLER v. CLIMAX MOLYBDENUM CO.

### SOUTH PARK R. CO. v. SAME.
#### Nos. 1587, 1588.

Circuit Court of Appeals, Tenth Circuit.
April 18, 1938.

Victor A. Miller, of Denver, Colo., pro se (Thomas Keely, Rodney J. Bardwell, Jr., Robert S. Palmer, and Erskine R. Myer, all of Denver, Colo., on the brief), for appellants.

Walter E. Schwed, of Denver, Colo. (Barney L. Whatley, of Denver, Colo., on the brief), for appellee.

Before LEWIS, PHILLIPS, and WILLIAMS, Circuit Judges.

LEWIS, Circuit Judge (after stating the facts as above).

On April 7, 1937, the Climax Molybdenum Company filed its bill of complaint in the United States District Court against Miller and the Colorado and Southern Railway Company, being cause here numbered 1587. It alleged the facts with reference to the written contract between Miller and the Colorado Southern Railway Company of July 14, 1932, herein above partly quoted; that Miller had sued that railway company in the state court for specific performance of that contract and for the appointment of a receiver of the railway company property; that to turn over the entire line from Waterton to Leadville or that part of it from Climax to Leadville to Miller or to a receiver would be in effect in violation of the orders of the Interstate Commerce Commission and would cause great injury and damage to the Molybdenum Company. It alleged that it had no plain, speedy or adequate remedy at law, and it asked that both Miller and the Colorado and Southern Railway Company be enjoined and restrained, the first from receiving the railway property of the Colorado and Southern Railway Company or procuring a receiver therefor and the second from conveying or transferring to Miller any part of the property or changing the present method of operating that segment without authority therefor from the Interstate Commerce Commission first had and obtained.

Miller answered and attacked the federal court's jurisdiction and alleged that the suit was wrongfully brought to avoid the effect of section 265 of the Judicial Code, 28 U.S.C.A. § 379. Other attacks and criticisms are made on the bill. He insisted in his answer that under his contract of July 14, 1932, he was entitled to the appointment of a receiver of the railway and a decree for specific performance of said contract and to the rolling stock described in said contract; that service between Climax and Leadville had not been impaired and can not be impaired by the state court litigation.

On April 16, 1937, the Molybdenum Company brought its suit in the United States District Court for the District of Colorado against the South Park Railroad Company and the Colorado and Southern Railway Company, here numbered 1588. It again alleged the facts that have been stated with reference to the procedures before the Interstate Commerce Commission and the orders that it had made. It further alleged the contract of July 14, 1932, between Miller and the Colorado and Southern and the character of the suit brought by the South Park Railroad Company in Summit county, Colorado, seeking to condemn the line of railway and a large part of the equipment used in its operation for the purpose of operating that part of it and its branches east of Climax; that on the day that suit was filed, April 12, 1937, the South Park Railroad Company, plaintiff, procured an ex parte order of said state district court that upon deposit by it in court of $1,000 the South Park Railroad Company might take possession of and use during the pendency and until final conclusion of said condemnation suit the said part of said line of railway, its branch lines and certain specified equipment consisting of engines, cars and snow plows; that the complainant in that case made the deposit of $1,000. It was alleged that if the South Park Railroad Company is permitted to take possession of the equipment so ordered and if the Colorado and Southern Railway Company is permitted to deliver the equipment specified in said order to it, that the Molybdenum Company will be unable to procure the necessary rolling stock to serve its customers or operate its mining property and will be compelled to cease its operations, close its plant and discharge its employes; that it will be left without railroad facilities and no one would be equipped to operate the line between Climax and Leadville; that the conduct of the South Park Railroad taken and threat-

ened would be in violation of and contrary to the previous orders of the Interstate Commerce Commission; that the South Park Railroad Company relies on said contract that Miller made with the Colorado and Southern Railway Company on July 14, 1932, said Colorado and Southern Railway Company having by said contract conveyed the beneficial title to the equipment as well as the road. The Climax Molybdenum Company prayed for injunctive relief against the South Park Railroad Company and the Colorado and Southern Railway Company enjoining the former from receiving, possessing, taking or in any manner acquiring any of said railway equipment, and enjoining the latter from delivering any of said equipment to the South Park Railroad Company.

The South Park Railroad Company alleged, among other things, that two days after the state court in Summit county made its order that the South Park Railroad Company might take possession of the rolling stock it made its offer that it would release and quit claim to the Colorado and Southern Railway Company such of its equipment as would be necessary to its operation of the line between Climax and Leadville in order that it might continue to serve the requirements of the Molybdenum Company, although, it alleged, the Molybdenum Company "has no vestige of right, title or interest in said rolling stock and equipment through which it may compel the South Park Company to turn over and deliver to the Colorado and Southern Railway Company such rolling stock and equipment should the South Park Railroad Company come into legal ownership, possession and control thereof; that it is willing and offers to rent and lease on reasonable terms so much of the equipment and rolling stock as may be necessary to the operations which the Colorado and Southern Railway Company is required to maintain upon that portion of the line between Climax and Leadville." The South Park Railroad Company opposed the granting of the injunctive relief sought by the Molybdenum Company. The Colorado and Southern answered: "that if said South Park Railroad Company is permitted to take possession of the equipment specified in said order (of the district court of Summit county), this defendant will be unable to provide and furnish all the rolling stock required to handle and transport the business and traffic of the plaintiff."

On application the Colorado and Southern Railway Company and Victor A. Miller were enjoined as sought in the first suit brought by the Molybdenum Company, and the South Park Railroad Company and the Colorado and Southern Railway Company were enjoined as sought in the second suit brought by the Molybdenum Company.

Plainly, the institution of these two suits by the Climax Molybdenum Company was caused by the bringing of the two suits in the state district court of Colorado, one by Victor A. Miller against the Colorado and Southern Railway Company, a Colorado corporation, and the other by the South Park Railroad Company, a Colorado corporation, against the Colorado and Southern Railway Company.

The Colorado and Southern Railway Company operated for many years a narrow gauge railway from Denver, Colorado, westward through mountainous territory to Leadville, Colorado, consisting of approximately 150 miles of mainline and several branch lines. Several years ago it instituted proceedings before the Interstate Commerce Commission to obtain an order permitting it to abandon the line from Denver to Leadville and its branch lines. It had and still has approximately 900 miles of other railway in Wyoming, Colorado and New Mexico and perhaps a small amount of mileage in some of the adjoining states. Its first application for abandonment was denied with leave given to renew it. Finally on renewal it was granted with this exception, the Interstate Commerce Commission refused to grant abandonment of about fifteen miles of the mainline extending from the station Climax westwardly to Leadville. That was because appellee in cases here on appeal has a large mine at Climax that produces the rare metal molybdenum used in the manufacture of steel. Its only outlet for shipping is over that segment of the road, thence over the Denver Rio Grande Western and connecting carriers its products reaches all parts of the world. The facts in that respect and the great increase in the use of molybdenum are set forth above and apparently was the inducement for the Commission's final action.

We think each of the suits brought in the state court against the Colorado and Southern Railway Company by Miller and by the South Park Railroad Company threatened violation of the order of the

Interstate Commerce Commission that the Colorado and Southern should continue operation of that part of the line between Climax and Leadville. The Colorado and Southern concedes in its answer here that it is its duty in obedience to the orders of the Commission to continue that operation, but it says that it can not do so if through the state court possession of that part of the rolling stock which the South Park is seeking to obtain is in fact obtained by it, and it is obvious if Miller should succeed in placing a receiver in possession and charge of that part of the road that also would prevent or interfere with its operation by the Colorado and Southern Railway Company. Miller also in his state court suit seeks decree for specific performance of his contract of July 14, 1932. In this court by affidavit in opposition to the issuance of the writ, in his answer, and in his argument pro se he concedes that he can not interfere with that part of the line, but he did not offer to amend his bill in the state court by eliminating the Climax-Leadville segment from that suit. The South Park Railroad Company in its answer to the bill of the Climax Molybdenum Company offered to lease to the Colorado and Southern Railway Company the necessary rolling stock out of that described in Miller's contract that might be needed in the continuation of operations of that segment and then added as a separate defense that Molybdenum Company had a plain, speedy and complete remedy at law in that it may compel the Colorado and Southern Railway Company to procure necessary cars from the South Park Company or others by normal, customary legal processes by application to and proceedings before the public utilities commission of the state of Colorado or the Interstate Commerce Commission of which Molybdenum Company must avail itself prior to an application to this court. We do not doubt that the District Judge exercised a wise discretion in granting the writs.

Both appellants contend that this court is without jurisdiction. Title 28 U.S.C.A., § 41, pars. (8) and (27) give the District Court jurisdiction:

"Of all suits and proceedings arising under any law regulating commerce," and

"Of all cases for the enforcement * * * of any order of the Interstate Commerce Commission."

Title 49 U.S.C.A. § 1 (18), (19) and (20) makes provision for the abandonment of lines or parts of lines of railway. They require procedure before the Interstate Commerce Commission. Paragraph (20) contains this:

"Any construction, operation, or abandonment contrary to the provisions of this paragraph or of paragraph (18) or (19) of this section may be enjoined by any court of competent jurisdiction at the suit of the United States, the commission, any commission or regulating body of the State or States affected, or any party in interest; and any carrier which * * * knowingly authorizes, consents to, or permits any violation of the provisions of this paragraph or of paragraph (18) of this section, shall upon conviction thereof be punished," etc. Lucking v. Detroit Nav. Co., 265 U.S. 346, 44 S.Ct. 504, 68 L.Ed. 1047.

It is argued with much insistence that both suits brought by the Molybdenum Company fly in the face of the prohibition of section 379, 28 U.S.C.A., which provides that the writ shall not be granted by any court of the United States to stay proceedings in any court of a state. But the writ does not stay court proceedings in either case brought in the state court. It did not seek a stay of them. Each stay order and each writ specified future acts by the parties to those suits. Neither writ commanded, directed or prohibited either court or its officers to do, not to do, or refrain from doing any thing. Moreover, that section of the statute is not one of jurisdiction. Smith v. Apple, 264 U.S. 274, 44 S.Ct. 311, 68 L.Ed. 678; National Surety Co. v. State Bank, 8 Cir., 120 F. 593, 61 L.R.A. 394; Chicago, R. I. & P. Co. v. Callicotte, 8 Cir., 267 F. 799, 16 A.L.R. 386.

The District Judge delivered an opinion in passing on the issue whether writs of injunction should issue. It has been certified up with the record. In reference to the South Park Railroad Company he said this:

"It appears there has been very recently organized a corporation known as The South Park Railroad Company, defendant in the case. It has no paid in capital, has never owned or operated a railroad, and there is no showing here of its ability to operate in the event it should acquire any part or all of this railroad."

That company must have been acting with, under the direction of, or in collusion with Miller, because Miller attached the contract of July 14, 1932, with the Colorado

and Southern to his complaint in the state court, and within less than a month thereafter the South Park Railroad Company filed its suit against the Colorado and Southern Railway Company in the state court in Summit county and it attached that same contract to its complaint. Each suit, in our opinion, was brought to circumvent and avoid the rulings of the Interstate Commerce Commission.

The orders appealed from are affirmed.