CITY OF ALEXANDRIA, LOUISIANA, Appellant,

v.

CHICAGO, ROCK ISLAND AND PACIFIC RAILROAD COMPANY, Appellee.

No. 19675.

United States Court of Appeals Fifth Circuit.

July 30, 1963.

Frank H. Peterman, George B. Hall, Alexandria, La., for appellant.

Nauman S. Scott, Alexandria, La., for appellee.

Before HUTCHESON, WISDOM, and GEWIN, Circuit Judges.

WISDOM, Circuit Judge.

In support of its petition for a rehearing of the appeal in this cause, the Chicago, Rock Island and Pacific Railroad Company, filed an exceptionally forceful brief. The petitioner asserted that the Court's opinion is "directly contrary to the jurisprudence" and, in effect, "overrules" Smith v. Hoboken R. Warehouse & S. Connecting Co., 1946, 328 U.S. 123, 66 S.Ct. 947, 90 L.Ed. 1123, Thompson v. Texas Mexican Ry. Co., 1946, 328 U.S. 134, 66 S.Ct. 937, 90 L.Ed. 1132, and City of Des Moines v. Chicago & N. W. Ry. Co., 8 Cir. 1959, 264 F.2d 454. The vigor and earnestness of the brief persuaded the Court to take a close, hard look at our original opinion. Having scrutinized the cases on which Rock Island relies, we reaffirm the correctness of our original decision.

In Smith v. Hoboken the Supreme Court decided that a bankruptcy court could not allow the forfeiture of a lease when the lessee had not obtained a certificate from the Interstate Commerce Commission permitting the railroad to abandon the lines covered. The lessor claimed under a provision providing for forfeiture in the event of assignment. In deciding that the forfeiture provision could not be enforced without the determination of the abandonment question by the ICC, the court made the following comment:

> "Forfeiture of a lease in accordance with the provisions of § 70(b) may be wholly consistent with the preparation of a plan of reorganization under § 77. But, as we have said, the nature of the plan of reorganization to be submitted is entrusted primarily to the Commission. If forfeiture of leases can be decreed without prior reference of the matter to the Commission, it may be seriously embarrassed in preparing the plan which it deems necessary or desirable for the reorganization of the debtor." 328 U.S. at 132–133, 66 S.Ct. at 952–953.

This comment is the key to the proper interpretation of the case. The Court was mainly concerned over the proper adjustment of the Interstate Commerce Act with the Bankruptcy Act. Quite properly, the Court recognized that the primary responsibility for reorganizing railroads in financial difficulty lies with the Commission. The Commission should not be hampered in its operations by judicial decrees unduly encroaching into this territory. In addition, there is a very real distinction which removes the instant case from the Smith rule. This is the fact that here there is no actual or indeed threatened abandonment. Rock Island denies that it intends to abandon the Alexandria line. No one is threatening to disturb the Railroad's right of way. No one desires to cause a discontinuance of the service. The law is clear that an assessment against a railroad is valid. E. g., Branson v. Bush, 1919, 251 U.S. 182, 40 S.Ct. 113, 64 L.Ed. 215. Whether the judgment be denoted as in rem, in personam or whatever, the fact remains that the assessment upon which it is based is payable by the road. Some means must be available to a creditor to enforce collection against a solvent railroad without compelling the creditor to initiate an abandonment procedure before the Interstate Commerce Commission. The simple change of legal rela-

tionship which will take place if the Railroad is forced to pay its legal debts can not amount to an abandonment.

The same considerations apply in distinguishing Thompson. There a railroad attempted to exercise its right to "terminate and cancel" a trackage contract with the trustee of a bankrupt road. After purportedly exercising this right, the lessor upped the ante for the use of the tracks. The trustee refused to pay anything higher than the contract rate. This difference of opinion led to a law suit in the state court in which the lessor prayed for an injunction against the trustee's use of the tracks and recovery of $500 a day for past damages or, alternatively, the reasonable value of the use of the tracks. The state court awarded damages but denied the injunction. The Supreme Court reversed, holding that the Commission should pass on all the "terms and conditions" of the trackage agreement, including the abandonment issue. The entire arrangement was within the peculiar competency of the ICC and the Court ruled that it should play its part in the affair before the courts intervened. The trackage agreement in all its ramifications vitally affected the goal of an orderly, integrated rail transportation system.

The facts in City of Des Moines v. Chicago & N. W. Ry. Co., 8 Cir. 1959, 264 F.2d 454 are only superficially close to the facts here. In that case the city, claiming that the railway had violated an "ordinance" upon which its right to operate in the city's streets depended, decreed an ouster of the railway from the city's street. It went into the state court demanding an injunction along the lines of its decree. The case was removed by the Railway to the federal district court which dismissed the complaint. The Eighth Circuit "remanded", directing the trial court to retain jurisdiction pending disposition of the abandonment issue by the ICC. The court commented:

"Regardless, however, of whether a valid forfeiture would have existed under the ordinance, a court could still not decree an ouster of the Railway from the street, so long as this might mean an abandonment or discontinuance of a portion of the Railway's line or operation in the interstate field, until the Interstate Commerce Commission gave its permission to such abandonment or discontinuance being made." 264 F.2d at 457.

Therein lies the essential difference between that case and the one here. The city was demanding that the Railroad physically remove its main track from where it lay. Clearly, the Commission alone had the authority to allow the move to be made.

Rock Island's reliance on Miller v. Climax Molybdenum Co., 10 Cir. 1938, 96 F.2d 254, is plainly inappropriate. There Climax Molybdenum sought successfully to enjoin Miller and a corporation closely connected with him from specifically enforcing a contract of sale against a railroad company (the Colorado and Southern) which had sought unsuccessfully to gain permission from the Commission to abandon this part of its line. In sustaining the trial court's injunction the court commented:

"We think each of the suits brought in the state court against the Colorado and Southern Railway Company by Miller and the South Park Railroad Company threatened violation of the order of the Interstate Commerce Commission that the Colorado and Southern should continue operation of that part of the line between Climax and Leadville." 96 F.2d at 259–260.

There is no threat of violation of any order of the Commission in the instant case.

A district court decision not cited in our earlier opinion supports our conclusion, although we are not required to go as far as that court went. In Town of Conway v. Atlantic Coast Line R. R. Co., E.D.S.C., 20 F.2d 250, appeal dismissed by stipulation of the parties, 4 Cir. 1926, 15 F.2d 1008, the town sought to compel the railroad to remove

its tracks from a street where the town claimed it had no right to be. The court agreed that the railroad was not entitled to be where it was and granted the relief. In doing so the court spoke as follows in regard to the railroad's contention that the court could not order the removal until the ICC had passed on the matter:

"The theory of the defendant is that the Transportation Act, as construed by the cases referred to, constituted a new departure, and sought affirmatively to build up a system of railways prepared to handle promptly all the interstate traffic of the country, and that the power to order the abandonment of any track is now lodged solely in the Interstate Commerce Commission, and no change can be made without its consent. But I do not construe the act to apply to a case like the one at bar. The defendant does not seek to abandon a portion of its track. Nor does the town seek to compel it to abandon a portion where it has a legal right to remain. The act of Congress was intended to apply to those cases where the railroad company seeks to abandon a portion of its line of railroad, and possibly where it is sought to compel it to make such abandonment." 20 F.2d at 260.

Rock Island and the City agree that they do not want the Alexandria railroad abandoned. Yet here is a solvent railroad which can remove any question of abandonment by the simple expedient of paying a debt the Supreme Court of Louisiana has adjudged to be a just debt supported by a valid lien. We do not think that Commerce Act contemplated that a creditor would have to initiate "abandonment" proceedings in order to collect a relatively small just debt from a solvent railroad. "Abandonment" under the Act has a peculiar meaning, one that may even do violence to the ordinary acceptance of the term. But it is not that peculiar. If it is—and we say it is not—then the determination not to pay the just debt is entirely within the volition of the railroad. In the absence of any help from the statute on this point, the burden of going forward before the Commission ought to fall on the railroad.

It is ordered that the petition for rehearing in the above entitled and numbered cause be, and it is hereby denied.